**Lynn GREEN, Plaintiff–Appellant,**

v.

**Thomas D. HOCKING, Defendant–Appellee.**

No. 92–1794.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1993.

Decided Oct. 29, 1993.

---

Nora L. Wright, Saline, MI (argued and briefed), for plaintiff-appellant.

Murdock J. Hertzog, St. Clair Shores, MI (argued and briefed), for defendant-appellee.

Before: MARTIN and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

PER CURIAM.

Defendant Hocking is an attorney who filed a collection suit on behalf of a client. The amount of the debt was misstated by about $100, and Ms. Green, the plaintiff-appellant, sued Hocking. The district court dismissed her case, 792 F.Supp. 1064. On appeal, she argues that attorneys, even when engaged exclusively in litigation tasks such as filing complaints, are covered by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1601 *et seq.* We disagree, and affirm the judgment of the district court.

## I

On November 19, 1986, Lynn Green used a VISA credit card to purchase an electronic keyboard for $196.44 from Highland Appliances, Inc. VISA refused to accept the charge, and Highland assigned the debt to the Lee Corporation. In June 1991, Hocking, serving as the attorney for the Lee Corporation, filed a complaint in state court against Green. During the last five years, Hocking has filed as many as 2,000 civil complaints on behalf of creditors to collect consumer debts. Hocking occasionally will send a note to the debtor, but his general practice consists solely of filing lawsuits for the collection of debts. In the present case, he did not contact the debtor before filing suit.

The complaint alleged that Green owed Lee a total of $304.83. This figure reflects the cost of the keyboard, plus interest calculated at 18 percent. On July 11, 1991, Hocking filed an amended complaint, stating that Green owed Lee $239.56. This new figure

results from calculating interest at 5 percent.[1] Hocking acknowledges that the 18 percent rate was incorrect, as neither Lee nor Highland contracted for such a rate of interest.

After the parties settled the underlying dispute, Green sued in federal court, alleging that Hocking violated the FDCPA by misstating the total amount due based on his incorrect calculation of the appropriate interest rate. The complaint alleged that Hocking violated: 1) 15 U.S.C. § 1692e(2)(A) of the FDCPA, proscribing the false representation of the amount of any debt, and 2) 15 U.S.C. § 1692f(1), proscribing the collection, or attempted collection, of any amount, including interest, "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Green brought a motion for summary judgment, which Hocking opposed. The district court dismissed the case. The court ruled that Hocking, by confining his activities to those of a legal nature, is immune from liability under the FDCPA. Green then brought this timely appeal.

## II

■ The question presented is whether Hocking, by filing a complaint, qualifies as a debt collector within the meaning of the FDCPA.[2] The FDCPA imposes civil liability only on "debt collectors." 15 U.S.C. § 1692. The Act defines "debt collector" as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly

or indirectly, debts owed or due or asserted to be owed or due another....

15 U.S.C. § 1692a(6). The FDCPA, as originally enacted, specifically excluded attorneys from the definition of "debt collector." 15 U.S.C. § 1692a(6)(F) (1977). However, the statute was amended in 1986 to delete this exception. Pub.L. 99–361, 100 Stat. 768, 15 U.S.C. § 1692a(6).

Appellant contends that this court should apply a literal reading of the statute and conclude that Hocking's filing of a complaint places him within the Act's definition of debt collector. Appellant relies upon *Scott v. Jones*, 964 F.2d 314 (4th Cir.1992). In *Scott*, an attorney filed a collection suit in a venue that violated Section 1692i of the FDCPA. This section requires that any debt collection action be brought either in the judicial district in which the consumer signed the contract or in which the consumer resides. Because the clear language of the statute made the attorney's filing in an improper venue a violation, the court found that the attorney was covered by the Act. Appellant contends that we should follow the result reached in *Scott*.[3]

The present case is not so straightforward. 15 U.S.C. § 1692i specifically makes it unlawful to instigate a lawsuit in a venue not authorized by the Act, whether as an attorney or as a client. Conversely, no specific provision covers Hocking's actions. We must examine the words of the statute to determine whether the mere filing of a complaint, in the proper judicial district, constitutes a "communication" under the FDCPA. To determine the answer to this question, we

---

1. Plaintiff apparently called to Hocking's attention the inapplicability of the 18% interest rate. Plaintiff now contends, contrary to the finding of the district court, that even this figure is in error, as the proper amount should have been $232.39. This $7.17 discrepancy apparently stems from disputing the date on which interest should begin to accrue.

2. In his brief, in addition to arguing that his litigation activities were exempt from the FDCPA provisions, Hocking contended that the bona fide error exception, 15 U.S.C. § 1692k(c), applied. Because we find Hocking's first argument persuasive, we do not address the bona fide error exception.

3. Appellant also cites *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir.1992), and *Crossley v. Lieberman*, 868 F.2d 566 (3rd Cir.1989), in support of her position. However, in *Frey*, the attorney acted as a post-judgment bill collector, and the issue of exemption was never raised. In *Crossley*, the attorney sent a letter, rather than filing a lawsuit. We find both of these opinions persuasive. However, neither of these cases is applicable to the narrow question posed by the present case: whether attorneys functioning solely in a legal capacity are covered by the Act.

"must follow the cardinal rule that a statute is to be read as a whole, since the meaning of the statutory language depends on context." *King v. St. Vincent's Hospital,* —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991).

An examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law. A contrary result would produce absurd outcomes. For example, 15 U.S.C. § 1692g(b) provides that collection efforts must cease if, within thirty days of receiving a communication, the debtor disputes the amount owed. 15 U.S.C. § 1692c(c) provides that all debt communications must cease once the debtor makes such a request. Read literally, these provisions would mean that, once a creditor initiates a lawsuit, and the consumer responds that he does not owe the amount alleged, or that he wishes to cease communications, it would be unlawful to bring a motion for summary judgment. Or, if an attorney first writes a letter, and the consumer asks that communications cease, it would be unlawful to instigate a lawsuit. Additionally, 15 U.S.C. § 1692c(b) prevents a debt collector from communicating with any third party pertaining to the consumer's debt. Under this portion of the Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit. Furthermore, Section 1692e(5) makes it unlawful to threaten "to take any action that cannot legally be taken or that is not intended to be taken." Assuming a lawsuit is brought, and the consumer prevails to any extent, it would appear that the law has been broken, as the creditor threatened to take action that apparently, as a result of the judgment, "cannot legally be taken." These examples demonstrate that appellant's interpretation, that every act by an attorney in litigation should be covered by the Act, is wrong. Neither by cited language, nor by intent, did Congress prevent attorneys from engaging in the normal practice of law.

Moreover, the intent of the drafters is abundantly clear. The original legislation was designed to prevent harassment and deception in the collection of debts. Examples included obscene or profane language, threats of violence, and telephone calls at unreasonable hours. S.Rep. No. 382, 95th Cong., 1st Sess. 2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The intent of the 1986 FDCPA amendment was to close a loophole that allowed an attorney engaging in exactly the same unsavory debt collection activities to avoid liability solely because of possessing a law degree. Attorneys were advertising to creditors that they could do with impunity what other collectors no longer could do: "late night telephone calls to consumers, calls to consumers' employers concerning the consumers' debts," and "disclosure of consumers' debt to third parties." H.R.Rep. No. 405, 99th Cong., 2d Sess. 3–7, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1754–57.[4] By eliminating the loophole, Congress intended that lawyers stop using harassment techniques that other debt collectors were forced to abandon with the enactment of the FDCPA.

The FDCPA was not designed to inhibit litigation activities. According to Representative Annunzio, the sole sponsor of the 1986 amendment, "[t]he removal of the attorney exemption will not interfere with the practice of law by the Nation's attorneys." 131 Cong. Rec. 33,584 (1985). Annunzio further stated that "[o]nly collection activities, not legal activities, are covered by the act.... The act applies to attorneys when they are collecting debts, not when they are performing tasks of a legal nature.... The act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them." 132 Cong.Rec. H10,031 (1986);[5]

---

4. The point is underscored by an attorney advertisement presented to the Consumer Affairs Subcommittee that stated:

> Your member attorney is exempt from the requirements of the Fair Debt Collection Practices Act of 1978, [and] you are therefore protected against judgments on counter claims by your debtor based on unfair collection practices.

H.R.Rep. No. 405 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 1752, 1756.

5. While the views of the sponsor of legislation are not conclusive, they are entitled to substan-

*see also* Statements of General Policy or Interpretation[:] Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,100 (1988) (staff of the Federal Trade Commission, the agency charged with administrative enforcement of the FDCPA, interpreting the Act to mean that "[a]ttorneys or law firms that engage in traditional debt collection activities ... are covered by the FDCPA, but those whose practice is limited to legal activities are not covered").[6]

 Finally, appellant's position contravenes the elaborate controls on lawyers' conduct through the Rule 11 process. A comparison between Rule 11 and the FDCPA reveals many similarities. Rule 11 insures that an attorney who signs any document verifies that he has conducted an investigation, and that, to the best of his knowledge, the averments are accurate and grounded in fact. In the present case, a basic inquiry would have shown that the 18% interest rate was inaccurate. The appellee's misstatement in the complaint could constitute a violation of Rule 11. However, the decision to impose Rule 11 sanctions rests with the sound discretion of the trial court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

This discretion is integral to Rule 11, as it is believed that the court knows best how to regulate its forum. Thus, the court "has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted." Fed.R.Civ.P. 11 advisory committee notes, 1983 amend. Appellant's position would remove the court's discretion. In effect, it would mandate sanctions whenever an attorney makes the slightest error.[7] Because of the clear intent of the drafters, exhibited by their actual choice of words as well as the legislative history, we are unwill-

ing to impose a system of strict liability that conflicts with the current system of judicial regulation. We therefore hold that the actions of an attorney while conducting litigation are not covered by the FDCPA.

For the reasons stated, we AFFIRM the judgment of the district court.

---

tial weight. *Carlin Communications, Inc. v. F.C.C.*, 749 F.2d 113, 116 n. 7 (2d Cir.1984).

**6.** We do not find that the clear language of the statute supports appellant's position. However, we are mindful that in those rare cases where the intent of the statute's drafters is clearly contrary to the plain language, "the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d

290 (1989). In this case, the intent of the drafters is clear.

**7.** As an example, Hocking now contends that the proper amount owed was $239.56, whereas Green contends that the proper amount was $232.39. At oral argument, appellant's counsel agreed that this $7.17 discrepancy would constitute a violation of the Act for which appellant could obtain redress.