**Si AZAR, Plaintiff,**

v.

**John HAYTER, et al., Defendants.**

**No. GCA 94–10028–MMP.**

United States District Court,
N.D. Florida,
Gainesville Division.

Jan. 23, 1995.

*ORDER AND FINAL JUDGMENT*

PAUL, Chief Judge.

This cause is before the Court upon the magistrate judge's report and recommendation dated December 9, 1994. All parties have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Having considered the report and recommendation and all objections thereto timely filed by the parties, the

Court has determined that the recommendation should be adopted.

Accordingly, it is

ORDERED:

1. The magistrate judge's report and recommendation is adopted and incorporated by reference in this order of the Court.

2. The motions to dismiss, docs. 3 and 9, are GRANTED and the complaint DISMISSED with prejudice.

DONE AND ORDERED.

*REPORT AND RECOMMENDATION*

SHERRILL, United States Magistrate Judge.

This cause is before the court for ruling on motions to dismiss filed by Defendants Hayter, Armstrong and Papendick. Docs. 3 and 9. Plaintiff filed a response *pro se.* Doc. 13. An attorney sought leave to appear for Plaintiff *pro hac vice.* Doc. 15. Since the attorney resides in Gainesville, leave was granted until September 13, 1994, when the next test for admission to the local bar of this court was to be held. Doc. 16. That attorney has filed nothing further on behalf of Plaintiff, and has not entered an appearance as a member of the bar of the court. Thus, it is concluded that this is still a *pro se* case assigned to the undersigned for a report and recommendation.

**ALLEGATIONS OF THE COMPLAINT**

The complaint is filed under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Doc. 1. Plaintiff Si Azar sues Fran Armstrong, Rebecca Papendick, and an attorney, John Hayter. Plaintiff alleges that Armstrong is the president of Alliance Realty Services, Inc. (Alliance), and Papendick is an officer of Pickwick Park Condominium Association (Pickwick Park). He alleges that Armstrong and Papendick sent him a letter, attached as Exhibit A to the complaint (hereafter all references to exhibits are to those attached to the complaint).

The letter is actually sent to Azar by Alliance as Manager of Pickwick Park. It was to be signed by Francis Armstrong on behalf of Alliance as president. The letter is dated July 23, 1993. It begins "Dear Owner" and encloses a statement of past due fees and a ledger outlining charges and payments to the account. The statement attached to the letter bears the Alliance name and address at the top left corner, and the Pickwick Park name at the bottom left corner. The statement reflects a beginning balance, an entry for fees, two entries for late fees, and a total amount due of $4,025.00. The letter makes no specific demand for payment but a demand is implied by the reference to the fees as "past due."

On July 28, 1993, a complaint was filed in County Court against Plaintiff for the past due amounts, and summons was issued. Exhibit C. The complaint was filed by attorney Hayter as counsel for Pickwick Park, plaintiff in that suit. On August 1, 1993, Plaintiff sent a request for official records to Alliance by certified mail, asking for information on Pickwick Park. Exhibit B. On or about August 13, 1993, he filed a counterclaim against Pickwick Park, claiming that the allegations against him "were based on unacceptable accounting practices and are not credible." Exhibit D. Plaintiff does not indicate the ultimate outcome of the county court proceedings, but he was unsuccessful on the counterclaim. Exhibit G.

**ARGUMENTS OF THE PARTIES**

Plaintiff contends that the FDCPA requires an attorney acting as a debt collector to provide a validation right notice, to investigate the merit of the claim before demanding payment, and to satisfy himself that it is appropriate to send the dunning letter.[1] Plaintiff asserts that the FDCPA requires the debt collector to maintain detailed files and to notify the debtor of his right to inspect the files. Plaintiff claims that collection charges are only allowed where there is a bilateral contract. Plaintiff seeks actual damages, costs, and damages under 15 U.S.C. § 1692k of $1000 per statutory violation.

Plaintiff does not specify which sections of the FDCPA have been violated. Since he refers to a validation notice, it is presumed

---

1. Hayter did not send the letter. Alliance did by its president, Armstrong.

the alleged violation is of § 1692g. That section requires a "debt collector" to send a written notice of the debt either with its initial communication or within five days thereof to the debtor. The written notice must contain the debt amount, the creditor's name, a statement that if the consumer does not dispute the debt within 30 days it will be presumed valid, and a statement that if written notice is provided that the debt is disputed, the debt collector will obtain verification of the debt or a copy of the judgment. § 1692g(a)(1)–(4). Collection of the disputed debt must cease until the debt collector obtains verification or a copy of the judgment and mails it to the consumer. § 1692g(b). No provision of the FDCPA has been found which would require a debt collector independently to investigate the merit of the debt, except to obtain verification, or to investigate the accounting principles of the creditor, or to keep detailed files.

Defendant Hayter asserts that condominium association dues are not debts covered by the Act, that his client is not a debt collector under the Act, and that damages are not recoverable for the filing of a lawsuit without any prior communication with the debtor. Hayter also asserts that, since the claims should have been raised by compulsory counterclaim in the county court case, and since they were not, are barred by *res judicata*. Finally, he argues that Pickwick Park is an indispensable party.

Defendants Armstrong and Papendick seek to quash service of process because the summons listed Alliance and Pickwick Park as Defendants, rather than individually as alleged in the complaint. They also seek dismissal for failure to state a claim upon which relief can be granted. They argue Plaintiff has failed to state a claim because he has failed to allege a personal debt encompassed by the Act, failed to allege that they are debt collectors under the Act, and failed to allege any actions taken in violation of the Act.

## LEGAL ANALYSIS

### The FDCPA

■ A purpose of the FDCPA, 15 U.S.C. § 1692 *et seq,* is to protect consumers by eliminating abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). The Act prohibits conduct meant to harass or making deceptive representations in collection of a debt. §§ 1692d and 1692e. A debt collector who fails violates the FDCPA is liable for actual damages and additional damages up to $1000 per action. § 1692k. The additional damage amount is per action, not per violation as asserted by Plaintiff, however. *Harper v. Better Business Services, Inc.,* 961 F.2d 1561, 1563 (11th Cir.1992).

### *Res judicata,* indispensable parties, and sufficiency of service of process

■ Hayter's argument that Plaintiff is barred by *res judicata* is unpersuasive. The case cited by Defendant Hayter[2] stands for the proposition that failure to assert a compulsory counterclaim, which is a claim against an opposing party arising out of the same transaction or occurrence which is the subject of the opposing party's claim, results in waiver or estoppel. Plaintiff's FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt.

■ Hayter's argument that Pickwick Park is an indispensable party is unsupported by citation to authority and appears frivolous. The undersigned sees no reason why suit under the FDCPA need join the original creditor. The issue concerns debt collection methods, not the debt.

■ The contention that process was insufficient as to Armstrong and Papendick is persuasive. The complaint sued these persons individually. It did not sue Alliance or Pickwick Park, both of which are alleged to be separate legal entities. But since the complaint fails to state a claim at all, in the interest judicial economy the court should reach that issue.

**2.** *Lawyers Title Ins. Corp. v. Little River Bank &* *Trust Co.,* 228 So.2d 412 (Fla. 3d DCA 1969).

The dispositive arguments before the court are whether the amount owed by Plaintiff is a "debt" as defined in the FDCPA, and whether each Defendant is a "debt collector" as defined at 15 U.S.C. § 1692a(6). Each Defendant has raised these defenses.

**Whether Plaintiff has alleged a "debt" as defined by the Act**

■ Plaintiff does not allege in the complaint that the amount sought to be collected by Defendants was an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." That is how a "debt" is defined by the Act. § 1692a(5).

Plaintiff states in his reply memorandum that he purchased the condominium for his daughters, all students of the University of Florida. Doc. 13. He does not state whether his daughters were living there at the time the amounts came due, or that the fees and late fees (as opposed to the unit itself) were for property, insurance or services primarily for personal, family, or household purposes. The complaint against him in county court refers to "unpaid condominium assessments and related charges," and Plaintiff's counterclaim refers to the "monthly $70.00 management fees." Exhibits C and D.

The case law interpreting the meaning of debt under § 1692a(5) "is sparse." *Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir.1994) (finding two circuit court cases on the subject, both from the Third Circuit). In *Mabe* the court determined that child support obligations arising out of an administrative support order did not qualify as debts because not incurred in exchange for goods or services. "Rather, the [Department of Social Services] imposed these obligations upon appellants to force them to fulfill their parental duty to support their children." 32 F.3d at 88.

In *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir.1987) (cited in *Mabe*), the court was presented with the question of whether plaintiff had met the "threshold requirement," that the prohibited practices were used in attempt to collect a "debt" as defined by the statute. 834 F.2d at 1167. There a demand letter was sent from the defendant (HBO) to plaintiff and others, demanding that illegal reception of an unauthorized HBO cable signal cease, that equipment be returned, and demanding payment of $300 as an *out of court* settlement. The court affirmed dismissal of the FDCPA claim for failure to state a claim upon which relief could be granted since the obligation was not within the statutory definition of debt:

> We find that the type of transaction which may give rise to a "debt" as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, *i.e.*, one involving the offer or extension of credit to a consumer. Specifically it is a transaction in which a consumer is offered or extended the right to acquire "money, property, insurance, or services" which are "primarily for household purposes" and to defer payment.

834 F.2d at 1168–1169. Since there was no offer or extension of credit asserted there, the court found the complaint failed to allege a substantial federal claim. *Id.*

In *Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) (cited in *Mabe* and *Zimmerman*), the court held that a per capita tax levied by local taxing authorities was not a debt under the FDCPA. The court found, "at a minimum," the debt must arise "as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages." 626 F.2d at 278, *quoted at* 834 F.2d at 1168.

The nature of the fees in this case has not been alleged. It is probable that the fees are simply the assessments by the condominium association to all condominium owners of the costs of maintenance of common areas. Such fees arise by contract with the purchase of real estate in this form, are assessed on a regular basis, and, like rent, do not reflect deferred payments on a prior debt. There is no evidence of a *pro tanto* exchange. Accepting as true all well-pleaded factual alle-

gations and reasonable inferences from those allegations, as the court must in ruling on a motion to dismiss,[3] Plaintiff has failed to state a claim under the FDCPA because he has failed to allege the essential elements of a "debt."

**Whether Plaintiff has alleged that Defendants are "debt collectors" as defined by the Act**

■ The second question is whether any of the named Defendants have been alleged to be debt collectors for purposes of the FDCPA. Section 1692a(6) provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion [in subsection (F)], the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title [prohibiting taking or threatening to take any nonjudicial action to effect dispossession or disablement of property in certain situations], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> \* \* \* \* \* \*
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Stated another way, creditors are generally *not* considered to be "debt collectors" subject to the act unless the debt collector is also the assignee of the debt. *Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 333 (S.D.Ga.1988).

■ Here the amount owed (whether or not a "debt" under the Act) was undoubtedly originated by Pickwick Park, the condominium association.[4] Alliance was simply the Manager for Pickwick Park. As alleged by Plaintiff, it was Pickwick Park itself, through its manager, who sought payment for the debt owed Pickwick Park. A creditor is not a "debt collector" as defined by the Act. Viewed another way, Alliance, as Manager, had a fiduciary duty to Pickwick Park to collect fees owed, and thus it is excluded from the definition as a "debt collector" by subsection (F)(i). Moreover, there is no indication that either Pickwick Park or Alliance obtained the debt after it was past due, and the exclusion of subsection (F)(iii) would apply. Taking the allegations as true, Plaintiff has failed to state a substantial federal claim against Armstrong or Papendick as employees of Alliance or Pickwick Park, or, for that matter, against Alliance or Pickwick Park (should he seek to amend), as he has failed to alleged they were debt collectors. Since Plaintiff has advanced no alternative allegations of fact, doc. 13, dismissal of the complaint against Armstrong and Papendick should be with prejudice.

■ The claim against attorney Hayter is more complicated. Plaintiff alleges that Hayter "regularly attempts to collect debts alleged to be due another." This case presents the issue of whether an attorney filing a complaint or engaging in litigation for collection of a debt is a "debt collector" under the

---

**3.** *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992) (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

**4.** It is improbable that the "fee" is a charge between Alliance, the manager, and Plaintiff. But if it were, Alliance would be the creditor and Pickwick Park would have had nothing to do with it at all, whether as a creditor or a debt collector.

FDCPA.[5] The Eleventh Circuit has not considered this issue, and other circuits are not in agreement.

■ Prior to amendment in 1986, § 1692a(F)[6] excluded from the definition of debt collector any attorney collecting a debt as an attorney on behalf of a client. In *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir.1994), cert. granted —— U.S. ——, 115 S.Ct. 416, 130 L.Ed.2d 332 (1994), the plaintiff-debtor defaulted on her car loan. She also discontinued her car insurance. The installment contract provided that the creditor could purchase insurance to be reimbursed by the buyer if the buyer did not keep the vehicle insured. The creditor bank purchased insurance and hired an attorney to recover the remaining installments and insurance costs. 25 F.3d at 537. Plaintiff sued the attorney as a debt collector alleging violations of the FDCPA. The court found the statutory language defining debt collector to be clear, without any hint that the activities of an attorney in litigation should be excluded. 25 F.3d at 538. Since the proceedings were at the motion to dismiss stage and plaintiff had alleged that the attorney and his firm were "regularly engaged for profit in the collection of debts allegedly owed consumers," it found they were debt collectors under the act. *Id.* *Jenkins* noted that its ruling was consistent with the decision of the Fourth Circuit in *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992), which found under the plain meaning of the statute that an attorney engaged in litigation is a debt collector if he meets the statutory definition. 25 F.3d at 539.

The Ninth Circuit has also rejected an exemption for lawyers in litigation, "declin[ing] to adopt this 'phantom limb' theory of statutory interpretation—allowing an exercised provision to continue to determine the scope of a statute." *Fox. v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1512 (9th Cir. 1994). The court declined to rely on a single legislator's statements that the repeal of the statutory exception would not interfere with the practice of law, as such statements "cannot reintroduce what the Congress has eliminated." *Id.* *Fox* found the legislative history "equivocal," and joined the Fourth Circuit (in *Scott*) in declining to adopt the commentary issued by the Federal Trade Commission that attorneys "whose practice is limited to legal activities are not covered [by the FDCPA]." 15 F.3d at 1513 (citing the Federal Register); *Scott*, 964 F.2d at 317.

The Sixth Circuit, however, reached the opposite result relying on the statute as a whole and on its legislative history. *Green v. Hocking*, 9 F.3d 18, 21 (6th Cir.1993).[7]

> An examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law. A contrary result would produce absurd outcomes.

*Id.* One such absurd outcome envisioned by the court would be that if a creditor responded that he did not owe the debt after suit was filed, a motion for summary judgment filed thereafter could be in violation of §§ 1692g(b) and 1692c(c). A second absurdity foreseen by the court would be that if an attorney first writes a letter and the debtor asks that communications cease, the attorney would be forbidden to file a law suit. A third absurdity would be that filing documents in the course of litigation could be interpreted as communication with a "third party," the court, in violation of § 1692c(b). 9 F.3d at 21.

---

5. Hayter is only alleged to have filed suit on behalf of Pickwick Park, so this case does not present the issue of whether an attorney engaging in other activities, such as sending a letter prior to initiating suit, is a debt collector. *Cf.,* *Paulemon v. Tobin*, 30 F.3d 307, 310 (2d Cir. 1994) (dismissal inappropriate where alleged FDCPA violation was made in attorney's letter prior to filing suit, and "a 'litigation' exemption could apply only to litigation; that is, the filing of a complaint and related submissions to the court."). *See also, Crossley v. Lieberman*, 868 F.2d 566 (3d Cir.1989) (attorney who sent a letter threatening to proceed with suit, which could result in forced sale of property, court fees and sheriff's costs, was a debt collector).

6. The current version of § 1692a(F), quoted *supra,* was formerly subsection (G) and redesignated (F) in 1986.

7. *Green* was distinguished by *Jenkins*. As discussed above, *Jenkins* did not reach the legislative history, but ended its analysis with the plain language of the statute. 25 F.3d at 539.

*Green v. Hocking* also cited the legislative history in support of its conclusion. It found that "[t]he intent of the 1986 FDCPA amendment was to close a loophole that allowed an attorney engaging in exactly the same unsavory debt collection activities to avoid liability solely because of possessing a law degree." *Id.*

> According to Representative Annunzio, the sole sponsor of the 1986 amendment, "[t]he removal of the attorney exemption will not interfere with the practice of law by the Nation's attorneys." Annunzio further stated that "[o]nly collection activities, not legal activities, are covered by the act.... The act applies to attorneys when they are collecting debts, not when they are performing tasks of a legal nature.... The act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them.

*Id.,* citations (to the Congressional Record) omitted.

■ The reasoning in *Green* is more persuasive than the decisions of the other circuits. Where the plain meaning of a statute produces an absurd result or is contrary to the intent of the statute, a court has latitude to conclude that a more restrictive meaning was intended than the plain meaning of the words used. *In re Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 642, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978); *United States v. Kirby,* 74 U.S. (7 Wall.) 482, 486–487, 19 L.Ed. 278 (1869). "Unless the language of a statute is ambiguous, or would lead to absurd results, its plain meaning controls." *United States v. Chukwura,* 5 F.3d 1420, 1423 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 102, 130 L.Ed.2d 51 (1994).

"Congress' principal reason for enacting the FDCPA was to prevent abuses against these consumers by third party debt collectors who, unlike creditors, are unrestrained by the desire to protect their good will when collecting past due accounts." *Zimmerman,* 834 F.2d at 1168. Attorneys engaged in litigation are restrained in other ways. They are officers of the court and subject to certain standards of conduct. For example, in Florida they are subject to sanctions ranging from admonishment to disbarment for negligently or knowingly submitting false statements or documents to the court, or for withholding material information from the court. Fla.Stds. Imposing Law.Sancs. 6.1. Proceeding in federal court, they are constrained by Fed.R.Civ.P. 11. The court in *Green* noted that application of the FDCPA to litigation "contravenes the elaborate controls on lawyers' conduct through the Rule 11 process." 9 F.3d at 22.

■ Finally, a contrary interpretation of the statute would conceivably raise constitutional questions concerning access to the courts. The discussion in *Green* implicates that question, given the manner in which the statute would block litigation to collect a debt. It is fundamental that a statute be construed, if possible, in a manner to avoid conflict with the constitution. *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (while statutory construction may not be pressed to the point of "disingenuous evasion," "federal statutes are to be construed so as to avoid serious doubts as to their constitutionality, and that when faced with doubts the Court will first determine whether it is fairly possible to interpret the statute in a manner that renders it constitutionally valid.")

For these reasons, it is recommended that the court find that a lawyer who files suit on behalf of another to enforce a claim is not a "debt collector" as intended by the FDCPA. Any other conclusion leads to absurd results and potential constitutional problems.

**Conclusion**

In light of the above, Plaintiff has failed to state a claim upon which relief can be granted or a substantial federal claim under the FDCPA because he has failed to allege a debt for purposes of the FDCPA. Alternatively, dismissal is appropriate as Plaintiff has failed to allege that Defendants Armstrong, Papendick, or Hayter were debt collectors for purposes of the FDCPA. However, since the second reason for dismissal as to Hayter is now before the Supreme Court in *Jenkins,* in the event the court does not adopt the first part of the recommendation,

that a "debt" has not been alleged, it is recommended that the court stay disposition as to Hayter as a "debt collector" until the Supreme Court rules as to that issue.

It is therefore, respectfully RECOMMENDED that the motions to dismiss, docs. 3 and 9, be GRANTED and the complaint DISMISSED with prejudice.

IN CHAMBERS at Tallahassee, Florida, this 9th day of December, 1994.