Alan H. WADLINGTON, Tammy M. Berry, and Chip C. Brunette, Plaintiffs–Appellants,

v.

CREDIT ACCEPTANCE CORPORATION, Howard A. Katz, Howard A. Katz, P.C., George Leikin, and Leikin & Ingber, P.C., Defendants–Appellees.

No. 94–2143.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1995.

Decided Feb. 21, 1996.

Before WELLFORD, NELSON, and SUHRHEINRICH, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a judgment for the defendants in a purported class action brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. The lead defendant, Credit Acceptance Corporation, maintains that it took assignments of retail installment sales contracts entered into between the named plaintiffs and an automobile dealer. Alleging that the plaintiffs subsequently defaulted, Credit Acceptance sued them through counsel who are co-defendants herein. The collection actions were brought in a venue that was improper under the Act

if the company or its lawyers came within the statutory definition of a "debt collector" and if the venue provisions of the Act were not waived by acceptance of the venue provisions of the contracts.

We conclude that defendant Credit Acceptance Corporation was not a "debt collector" within the meaning of the Act, but that its lawyers came within the definition of that term. Because statutory liability is limited to debt collectors, we shall affirm the district court's judgment as to Credit Acceptance. We shall reverse the judgment as to the attorneys, remanding the case to the district court for further proceedings with respect to them.

## I

Plaintiff Alan Wadlington, a resident of Kent County in Western Michigan, purchased a 1983 Fleetwood Cadillac from Classic Car Company, Inc., a Kent County car dealer, in March of 1993. Mr. Wadlington made a down payment of $950.80 and agreed to pay an additional $2,851.52 in monthly installments that were to begin in April. Plaintiff Tammy Berry, also a resident of Kent County, purchased a 1985 Ford Escort from the same dealer at about the same time that Mr. Wadlington bought his car. Ms. Berry made a down payment of $500 and agreed to pay an additional $3,033.76 in monthly installments—an obligation guaranteed by plaintiff Chip Brunette as a co-signer of the contract—with the payments likewise to begin in April. These undertakings were memorialized in standard form retail installment sales contracts executed in Kent County.

Each contract disclosed on its face that the dealer was assigning the contract to Credit Acceptance Corporation. A representative of Classic Car Company signed a statement on the face of the contracts that included the following language:

"The dealer assigns this agreement to Credit Acceptance Corp. and agrees to the terms of assignment on the back of this agreement."

A "Notice of Assignment" printed below the dealer's name and address told purchasers that "[y]ou must make all future payments to Credit Acceptance Corp." The address of Credit Acceptance in Southfield, Michigan, was prominently displayed at two places in the contract. Southfield is located near Detroit, in the eastern part of the state.

Among the terms printed on the reverse side of the contracts was a provision reading as follows:

"We may sue the buyer or the guarantor in the city and county in the State of Michigan in which the dealer, the Credit Acceptance Corp., or any other holder of this agreement has its principal office."

At the bottom of the page—under the legend "[t]he following assignment is not part of the buyer's agreement"—this language was printed:

"**ASSIGNMENT.** For value received, the dealer assigns to the Credit Acceptance Corp. all the dealer's interest in this Motor Vehicle Purchase Agreement. . . ."

The purported assignments of the two contracts were made in accordance with a "servicing agreement" that had been entered into between Credit Acceptance and the dealer some months earlier.[1] The servicing agreement provided that retail installment sales contracts would be assigned to Credit Acceptance "for purposes of administration, servicing and collection. . . ." The dealer warranted that contracts so assigned would not be in default at the date of transfer. It is uncontested that neither of the contracts in question here was in default when formally assigned to Credit Acceptance.

As the dealer's assignee, Credit Acceptance undertook to "service and administer" retail installment sales contracts "on behalf of the Dealer. . . ." In this connection Credit Acceptance sent each customer a payment book with instructions on how payments should be made. The servicing agreement

---

1. An affidavit executed by Credit Acceptance's chief financial officer attests that as of the end of 1993 Credit Acceptance had business relationships with almost 1100 automobile dealers.

Credit Acceptance held aggregate retail installment sales receivables of approximately $223.5 million.

obligated Credit Acceptance to record all of the payments it received and to apply each month's collections as follows:

— First, to reimburse itself for all collection costs;

— Second, to pay itself a 20 percent service fee;

— Third, to liquidate outstanding advances from Credit Acceptance to the dealer; and

— Fourth, to pay the dealer anything that remained.

Advances to the dealer, the servicing agreement provided, could be made in an amount equal to the lesser of (1) 50 percent of the outstanding principal balance of the retail installment sales contract or (2) 150 percent of the customer's cash down payment. The agreement contemplated that such advances would be made, in Credit Acceptance's discretion, upon acceptance of retail installment sales contracts that were not in default at the time of transfer and that otherwise met the specifications of the agreement. Although the making of advances was discretionary, the plaintiffs tell us that an officer of Classic Car gave a deposition in which he testified that Credit Acceptance did in fact make advances to Classic Car "based on the down payment. . . ."

In sum, then, the program operated as follows. ˙ Retail installment sales contracts would be transferred to Credit Acceptance at or about the time they were signed by the dealer's customer. The dealer would receive an advance from Credit Acceptance, and the customer was supposed to make monthly payments to Credit Acceptance. If all monthly payment obligations were met, Credit Acceptance ultimately recovered its advances, its collection costs, and 20 percent of all net collections, with the balance of the contract price going to the dealer.

For one reason or another, Mr. Wadlington and Ms. Berry failed to make their monthly payments. In May of 1993 a collection action was brought against Mr. Wadlington in Michigan's 46th District Court, located in Southfield. A similar action was brought against Ms. Berry and Mr. Brunette in the same court some months later. Both law-

suits were brought through Leikin and Ingber, P.C., and attorney George Leikin on behalf of Credit Acceptance. Motions for a change of venue having been filed, the lawsuits were transferred by stipulation to a district court located in Kent County. (Notwithstanding the venue provisions of the retail installment sales contracts, according to Credit Acceptance's proofs, it has been the company's practice to agree to changes of venue where a consumer seeks a transfer to a forum more convenient for the consumer.)

In April of 1994, while the state court actions were pending in Kent County, the plaintiffs in the instant lawsuit sued Credit Acceptance and its lawyers—including attorney Howard Allen Katz and Howard Allen Katz, P.C., who also did collection work for Credit Acceptance—in the United States District Court for the Western District of Michigan. The complaint set forth claims under the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and Michigan's Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq.*

Although filed as a class action, the suit was never certified as such. Both Credit Acceptance and attorney Leikin and his firm moved for summary judgment a few weeks after commencement of the action. The district court granted the motions, entered judgment in favor of all defendants as to the federal claims, and dismissed the state claims without prejudice. The plaintiffs have perfected a timely appeal.

## II

■ The Fair Debt Collection Practices Act provides, with respect to lawsuits not brought to enforce a security interest in real property, that any "debt collector" who sues a consumer on a debt shall bring the action only in the judicial district

— "(A) in which such consumer signed the contract sued upon; or

— (B) in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a)(2).

Debt collectors who fail to comply with this or other provisions of the Act are subject to civil liability under 15 U.S.C. § 1692k.

Acting as attorneys for Credit Acceptance, defendant Leikin and his firm brought actions against plaintiffs Wadlington, Berry and Brunette in a judicial district in which the latter had apparently consented to be sued, but in which § 1692i(a)(2) prohibits "debt collectors" from bringing suit. Unless the provisions of the statute were waived—an issue the district court explicitly refrained from deciding—attorney Leikin and his firm violated the statute if they qualified as "debt collectors."

In *Green v. Hocking,* 9 F.3d 18, 20 (6th Cir.1993), this court observed that § 1692i "specifically makes it unlawful to instigate a lawsuit in a venue not authorized by the Act, whether as an attorney or as a client." Otherwise, *Green,* held, "the actions of an attorney while conducting litigation are not covered by the [Fair Debt Collection Practices Act]." *Id.* at 22. Giving *Green* a broader application than may have been warranted, the district court held in the case at bar that because the attorneys who filed collection actions for Credit Acceptance in Southfield were functioning as attorneys engaged solely in the practice of law, they were not subject to the Act.

*Green* was subsequently repudiated by the Supreme Court in *Heintz v. Jenkins,* —— U.S. ——, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The Seventh Circuit had held, in *Jenkins v. Heintz,* 25 F.3d 536 (7th Cir.1994), that an attorney and his law firm were acting as "debt collectors" when they filed lawsuits on behalf of a client to collect debts allegedly owed by consumers. Noting that its holding was in conflict with *Green,* the Seventh Circuit declined to "disregard plain statutory language in order to impose on the statute what we may consider a more reasonable meaning." *Id.* at 539. Certiorari was granted to resolve the conflict, and the Supreme Court concluded that the Seventh Circuit was correct: "The Act does apply to lawyers engaged in litigation." —— U.S. at ——, 115 S.Ct. at 1490.

In view of the Supreme Court's decision in *Heintz,* defendant Leikin and his firm have conceded that the judgment in their favor should be reversed and the case against them should be remanded to the district court for further proceedings. We shall follow that course, thereby affording the district court an opportunity to address the waiver issue that was pretermitted when the case was before the court originally.

### III

■ We turn now to the question whether Credit Acceptance itself came within the statutory definition of a "debt collector." The district court held that it did not. We agree.

A long and somewhat convoluted definition of the term "debt collector" is set forth in 15 U.S.C. § 1692a(6). The definition begins as follows:

> "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

If the principal purpose of the business conducted by Credit Acceptance Corporation is the collection of consumer debts owed to Credit Acceptance, the company might seem to be a debt collector under the first part of the quoted sentence even if it does not regularly collect or attempt to collect debts "owed or due another." As the district court noted, however, quoting *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985),

> "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors ... or an assignee of a debt, as long as the debt was not in default at the time it was assigned. See S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad. News 1695, 1698. See also *Kizer v. Finance America Credit Corp.,* 454 F.Supp. 937, 939 (N.D.Miss. 1978)."

The plaintiffs do not challenge this reading of § 1692a(6). They argue instead that an assignment of a retail installment sales con-

tract to Credit·Acceptance pursuant to the servicing agreement, even though regular on its face, "is not a valid assignment." Noting that the servicing agreement does not obligate Credit Acceptance to pay the car dealer anything up front, the plaintiffs contend that the purpose of the purported assignment is merely to facilitate collection of the debt for the dealer. Credit Acceptance, in other words, "is collecting the debts that are owed to Classic...."

We do not find the plaintiffs' argument persuasive. Once an installment sales contract has been assigned to Credit Acceptance, in our view, the debt it represents is owed to Credit Acceptance, not to Classic. Although Credit Acceptance apparently does, in practice, make a payment to the dealer up front, the validity of the assignment does not depend on this. Even if the dealer received only a promise to pay out of future collections, the dealer's only recourse would be against Credit Acceptance; having assigned its chose in action to Credit Acceptance, the dealer would clearly have no right to proceed against the consumer. The consumer's creditor would be Credit Acceptance Corporation, not Classic Car Company.

We are not unmindful of the fact that under the definition of "creditor" set forth in 15 U.S.C. § 1692a(4)—a definition that includes "any person ... to whom a debt is owed"—the term "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." But the debts in question here were not "in default" when Credit Acceptance received the assignment or transfer. Credit Acceptance is therefore a creditor of the plaintiffs under the statute, just as it is a creditor of the plaintiffs under the common law of Michigan.

If we are wrong in this—if the plaintiffs' creditor is really Classic Car Company, not Credit Acceptance Corporation—another portion of § 1692a(6) takes Credit Acceptance out of the "debt collector" definition anyway. The last part of the definition provides, in relevant part, that

"The term [debt collector] does not include—

＊　　＊　　＊　　＊　　＊　　＊

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person...." 15 U.S.C. § 1692a(6)(F)(iii).

Thus if Credit Acceptance were attempting to collect a debt that was really owed to Classic Car, Credit Acceptance would be exempted from the definition of a debt collector, under § 1692a(6)(F)(iii), because its activity "concern[ed]" a debt that was "not in default" at the time Credit Acceptance obtained the debt for servicing.

The plaintiffs argue that the (6)(F)(iii) exemption does not apply here because of the second sentence in paragraph (6). That sentence reads as follows:

"Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."

Credit Acceptance was not collecting its own debts under the name of a third person, and the sentence obviously has no application here.

Neither does the third sentence of § 1692a(6) apply to the facts of this case. The third sentence reads as follows:

"For the purpose of section 1692f(6) of this title, such term [i.e., "debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

If the principal purpose of Credit Acceptance's business were the enforcement of security interests—and the record does not show that to be the case—Credit Acceptance would be a debt collector "[f]or the purpose of section 1692f(6)...." But this would not help the plaintiffs at all; § 1692f(6) deals

only with "nonjudicial action to effect dispossession or disablement of property," and that is not the type of action complained of here.

In the final analysis, it is immaterial whether Credit Acceptance was attempting to collect debts owed to it or was attempting to collect debts owed to Classic Car. Either way, Credit Acceptance was simply not a "debt collector" within the meaning of the Act.

### IV

If attorney Leikin and his firm were "debt collectors," and if they violated § 1692i by bringing the collection actions in Southfield, did they thereby subject Credit Acceptance to vicarious liability under § 1692k even though Credit Acceptance, as we have seen, was not a "debt collector?" Citing *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507 (9th Cir.1994), the plaintiffs argue that we should answer this question in the affirmative. In *Fox,* however, the court was not prepared to say that Citicorp Credit Services—the counterpart of Credit Acceptance here—was not itself a "debt collector." If Citicorp was a debt collector, it would appear to accord with the intent of Congress for Citicorp to be held directly liable to a consumer whom Citicorp sued in the wrong judicial district. See *Fox,* 15 F.3d at 1516, pointing out that under the pre–1986 version of the Act, which contained an exemption for attorneys, § 1692i would have been superfluous if debt collectors could not be held vicariously liable for the actions of their attorneys.

We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a "debt collector." Section 1692k imposes liability only on a *"debt collector* who fails to comply with [a] provision of this subchapter...." 15 U.S.C. § 1692k(a) (emphasis supplied). The plaintiffs would have us impose liability on non-debt collectors too. This we decline to do.

The judgment of the district court is **AFFIRMED** as to Credit Acceptance Corporation and **REVERSED** as to the remaining defendants. The case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.

