**Jarrett E. THIES and Jacquelyn D. Thies, Plaintiffs,**

**v.**

**The LAW OFFICES OF WILLIAM A. WYMAN and Champs/The Kelly Group, Defendants.**

**No. CIVIL 97–0734 B (CGA).**

United States District Court, S.D. California.

July 23, 1997.

Michael Ernest Doukas and Harold M. Hewell, San Diego, CA, for plaintiffs.

Eric D. Morton, Carlsbad, CA, for defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

BREWSTER, District Judge.

On May 16, 1997, Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs are represented by Michael Ernest Doukas and Harold M. Hewell. Defendants are represented by Eric D. Morton. After careful consideration of the moving and opposing papers and for the reasons discussed in detail below, the Court hereby DENIES Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### I. Case Type and Jurisdiction

Plaintiffs Jarrett E. Thies and Jacquelyn D. Thies bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") seeking damages and other relief. Plaintiffs allege that Defendants, The Law Offices of William A. Wyman ("Wyman") and Champs/The Kelly Group ("Kelly"), violated the FDCPA while attempting to collect past-due homeowners association fees plus costs and attorney fees from Plaintiffs. Defendants move for a Rule 12(b)(6) dismissal on grounds that Plaintiffs fail to state a claim upon which relief lay be granted. More specifically, Defendants claim that Plaintiffs do not owe a "debt" as statutorily defined by FDCPA and cannot seek relief pursuant to this statute. Jurisdiction is proper under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

### II. Background

Plaintiffs own a house within the View Terrace Development in Escondido and are members of a homeowners association, the View Terrace Association ("Association"). The Association improves and maintains common areas within the development. In or about June 1996, Plaintiffs noticed that a common area adjacent to their home was in disrepair. Plaintiffs were unsuccessful in their attempts to have the Association maintain or repair the area. Based on the Association's failure to respond to their requests, Plaintiffs withheld their homeowner association fees for two months.

In August 1996, Plaintiffs resumed payment to the Association in care of Defendant Kelly and mailed a check for the past-due fees including late fees ($176.00) in mid–September. Soon after, Plaintiffs received a letter from Defendant Wyman which notified Plaintiffs that they owed $186.00 plus $30.00 in attorney fees. The letter also threatened recordation of a lien against Plaintiffs' property for the amount owed. In October 1996, Plaintiffs sent a check for their monthly dues plus late charges ($88.00); Defendant Wyman returned their September check of $176.00 because it did not represent the entire amount due. Plaintiffs continued to send checks for payments and late fees non-inclusive of attorney fees, and Defendant Wyman

continued to return the checks through March 1997. Defendants filed a claim against Plaintiffs, and on March 11, 1997, a Municipal Court of the County of San Diego entered default judgment against the Plaintiffs in the amount of $1314.88.

## III. Discussion

### A. Standard of Law

Under Rule 12(b)(6), a defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In making this determination, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. Los Angeles*, 828 F.2d 556, 561(9th Cir.1987).

### B. Plaintiffs' Cause of Action

The issue contained within this motion is whether or not homeowners association fees fall within the statutory definition of "debt" for the purposes of the FDCPA. A "debt" as defined by the FDCPA is (1) an obligation or alleged obligation of a consumer to pay money (2) arising out of a transaction in which (3) the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. *See* 15 U.S.C. § 1692a(5). Such an obligation does not need to be reduced to a judgment in order to fall under the protection of the FDCPA. *See id.*

A consumer for the purposes of this statute is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiffs are consumers within the purview of the statute as they are natural people and are obligated to pay their homeowners association fees because of a covenant that runs with their property.

#### 1. What Is A Transaction?

There is considerable confusion and conflict in the federal courts as to what a "transaction" is for the purposes of this statute. The statute requires in part that a "debt" encompass an obligation to pay that arises out of "a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily

for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The Ninth Circuit recently addressed the meaning of transaction within the FDCPA's definition of "debt." It held that the FDCPA is not limited to debts arising out of the offer or extension of credit. *See Charles v. Lundgren & Associates, P.C.*, 119 F.3d 739, ——, No. 96–15995, 1997 WL 370884, at *3, (9th Cir. July 8, 1997) (holding that a dishonored check used to pay for restaurant meal creates a "debt" under the FDCPA). In its opinion, the Ninth Circuit adopted in whole the reasoning of the Seventh Circuit in *Bass v. Stolper, Koritzinsky, Brewster, & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997).

In *Bass*, the Seventh Circuit interpreted the meaning of "transaction" under the FDCPA. It held that an offer or extension of credit was not required to constitute a debt for the purposes of the statute; the obligation to pay on a transaction, such as a dishonored check, created a debt. *See Bass*, 111 F.3d at 1326. The Seventh Circuit reasoned that the plain meaning of the statute, the congressional intent, and the legislative history supported a broad interpretation of "transaction." *See id.* Citing the legislative history of the FDCPA to support its position, the Seventh Circuit stated that "[e]arly versions of the Act clearly included a credit extension requirement in defining 'debt'.... We find it persuasive the fact that [the term 'credit'] was deleted from later drafts, and no reference to 'credit' was ever re-inserted in the definition." *Id.* at 1327. The court also cited a House Report stating the drafters' intent that "the term 'debt' include consumer obligations paid by check or other non-credit consumer obligations." *Id.* at 1327 (quoting H.R.Rep. No. 95–131, 95th Cong., 1st Sess. 4 (March 29, 1977)). Furthermore, as the court pointed out, it is prohibited from "reading into clear statutory language a restriction that Congress itself did not include." *Id.* at 1326 (citing *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995)).

In contrast to the Seventh and Ninth Circuits, the Third Circuit construed "transaction" as requiring an offer or extension of credit. In dicta, it held that a debt under

FDCPA is "a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment." *Zimmerman v. H.B.O. Affiliate Group*, 834 F.2d 1163 (3rd Cir.1987) (holding that tort liability to pay for pirated cable signal is not consumer debt) (quoting 15 U.S.C. § 1692a(5)).

In addition being bound by the Ninth Circuit precedent in *Charles*, the Court finds the Seventh Circuit's reasoning, which the Ninth Circuit adopted in whole, more persuasive than the Third Circuit's reasoning. The legislative history reflects Congress' intent that the FDCPA apply to all kinds of consumer transactions, not just credit transactions. Following this intent, the Ninth and Seventh Circuits construed "transaction" generally without the additional requirement of an extension or offer of credit.

■ Plaintiffs are obligated to pay their homeowner fees because of a covenant running with their property. Because no offer or extension of credit is required, the Court finds that a transaction, for the purposes of the FDCPA, arises out of Plaintiffs' obligation to pay dues for the services of the Association.

### 2. Primarily for Personal, Family or Household Purposes

Having established that Plaintiffs' obligation to pay money for services is a transaction, the Court addresses whether the "money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The subject of the transaction is the services Plaintiffs receive from the fees that they pay to the Association. The only question that remains is whether or not such association fees are primarily for personal, family, or household purposes.

Only once has the Ninth Circuit interpreted the meaning of the clause "primarily for personal, family, or household purposes." It concluded that a personal loan for business purposes did not conform to this qualification and did not constitute a debt under the

FDCPA. *See Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992) (holding that, personal loan used for venture capital in a software company is not primarily for personal, family, or household purposes). This precedent, however, is not particularly instructive for the purposes of the instant case.

Defendants cite district court cases from other circuits that decline to construe homeowner/condominium association fees as a "debt" under the FDCPA. A district court in Virginia found that an assessment by the subdivision for maintenance of a private road was not "primarily for personal, family, or household [purposes]." *Nance v. Petty, Livingston, Dawson & Devening*, 881 F.Supp. 223, 225 (W.D.Va.1994) (citing 15 U.S.C. § 1692a(5)). A district court in Florida reasoned that condominium fees were not consumer debt since "[t]here [was] no evidence of a *pro tanto* exchange." *Azar v. Hayter*, 874 F.Supp. 1314, 1318 (N.D.Fla.), *aff'd*, 66 F.3d 342 (11th Cir.1995). The *Azar* court likened the condominium fees in its case to the per capita tax in *Staub v. Harris*, 626 F.2d 275, 278 (3rd Cir.1980). In *Staub*, the court found that taxes "primarily finance governmental functions, such as schools police and fire protection, which secondarily may benefit an individual resident or household" and therefore do not constitute a "debt" under the FDCPA. *Staub*, 626 F.2d at 277–78 (quoting lower court decision).

Defendants also cite an Illinois district court case which held that condominium fees were not "debt" because they "operate to provide communal goods and services which only indirectly benefit the payer." *Riter v. Moss & Bloomberg, Ltd.*, 932 F.Supp. 210, 211 (N.D.Ill.1996). Recently, however, *Riter* was overturned by the Seventh Circuit in *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir.1997) (holding that past-due condominium fees are a debt under the FDCPA). In *Newman*, the Seventh Circuit held that "assessments ... used to improve or maintain commonly-owned areas ... qualifies as 'personal, family, or household.'" *Newman*, 1997 WL 375341 at *4, 119 F.3d at ——. In finding that taxes are not like condominium fees, the Seventh Circuit stated, "Rather than providing for

government services, these [condominium] assessments are collected in order to improve and maintain commonly-owned areas used by each unit owner. The assessments thereby directly benefit each household in the development." *Id.*

■ The Court finds that the arguments from cases cited by Defendants unduly narrow the application of the FDCPA. The FDCPA has no requirement that a service "directly" benefit the consumer, as the *Riter* court concluded, nor does the plain language of the FDCPA require a *"pro tanto* exchange" as the court in *Azar* did. The Court declines to follow these unwarranted restrictions, and applies the reasoning in *Newman* to homeowner association fees. The Court finds that homeowner association fees for maintenance and improvement of common areas within a housing development are a service primarily for personal, family, and household purposes.

The fact that many households may use or benefit from a common area does not logically diminish the "primary" nature of the service. For example, if a consumer failed to pay his membership dues to a health club, there would be no question that this would create a "debt" under the FDCPA because the obligation to pay for the services rendered would be primarily for his personal purposes. The debt to the health club would be no different merely because other members also used the services of the club, nor would the debt change if the consumer never used the services of the health club but was still under contract to pay dues. A homeowners association is akin to a health club or other exclusive group. A homeowner, by purchasing the property, is under a contractual agreement to be a "member of the club." With the payment of dues come the services provided by the Association—use of the common areas improved and maintained with the dues. If the association maintains a swimming pool or tennis courts, they are services available for the exclusive use of the members. The purpose of these services do not become "secondary" or "indirect" merely because other members may also use them.

The maintenance and improvement of common areas also serve a "personal, family, or household purpose" as required by the FDCPA. Many times association fees are applied to such purposes as painting the outside of or re-roofing common buildings. In the instant case, the Association maintained and improved common areas in the development. Plaintiffs, in purchasing their property, believed that the Association would maintain the common area adjoining their property and that they would not be responsible for its upkeep. Similarly, they knew that other common areas located within the development, such as parks, gardens, and swimming pools, would continue to be maintained. The upkeep of such common areas serves the purpose of preserving the aesthetic nature of the housing development for the use and enjoyment of each association member. Because anyone living within the development may use or enjoy these services, the Association's maintenance and improvement of common areas can be utilized by a single person, members of a family, or members of a household. Thus, these services may have a personal, family, or household purpose depending upon the person or people that use it. In the instant case, the Court finds that the services funded by homeowner association fees serve all three purposes and that Plaintiffs do have a "debt" under the FDCPA. Accordingly, the Court DENIES Defendants' motion to dismiss.

## IV. Conclusion

Plaintiffs are consumers that have an obligation to pay money to the Association. Because this obligation arises out of a "transaction" which is "primarily for personal, family, or household purposes," Plaintiffs owe a "debt" within the definition of the FDCPA. As such, the Court finds that the Plaintiffs have stated a claim under the FDCPA. The Court therefore DENIES Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6).

IT IS SO ORDERED.