ICA CONSTRUCTION CORPORATION; Tropical Village, Incorporated, Plaintiffs–Appellants,

v.

Robert REICH, Secretary of the United States Department of Labor, Defendant–Appellee.

No. 93–5337.

United States Court of Appeals, Eleventh Circuit.

May 11, 1995.

Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for appellants.

Kendall Coffey, U.S. Atty., Miami, FL, William J. Stone, Lois R. Zuckerman, U.S. Dept. of Labor, Washington, DC, for appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and EISELE *, Senior District Judge.

PER CURIAM:

ICA Construction Corp. ("ICA") and Tropical Village, Inc. ("Tropical") appeal the district court's order disposing of their complaint, in which they sought reversal of Department of Labor wage rate determinations. We AFFIRM.

### I.

ICA, as general contractor, and Tropical, as developer, were involved in constructing a residential housing project ("the Tropical Project"), which was to be financed pursuant to a loan coinsurance agreement between American Capital Resource, Inc. ("ACR") and the Department of Housing and Urban Development ("HUD"). Participants in the HUD loan coinsurance program must comply with the Davis–Bacon Act, 40 U.S.C. § 276a, *et seq.*, which requires that project wages equal the prevailing local wage rate as determined by the Secretary of Labor. *See* 12 U.S.C. § 1715c(a).

Pursuant to ACR's request in December 1989, HUD obtained a prevailing wage rate determination for the Tropical Project and, by letter dated January 29, 1990, notified ACR that Wage Decision FL90–28, which established the prevailing wages for residential construction in Dade County, Florida, would apply to the project. On February 6,

Ricard I. Manas, Manas & Manas, P.A., Miami, FL, Robert T. Kofman, Stearns,

---

* Honorable Garnett Thomas Eisele, Senior U.S. District Judge for the District of Arkansas, sitting by designation.

1990, ACR sent Tropical a copy of FL90–28 and of the Supplemental Conditions of the Contract for Construction which provided that "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5[sic] herein incorporated by reference in this contract."

Appellants estimated their project costs based upon FL90–28, submitted the estimate to ACR, and allegedly received project approval from ACR in April 1990. Prior to final HUD approval, the Department of Labor ("DOL") revised FL90–28 by Modification No. 1, published on October 12, 1990. HUD sent Modification No. 1 to ACR on October 24, 1990. Apparently ACR informed Appellants on November 2, 1990 that Modification No. 1 would apply to the Tropical Project.[1] On December 19, 1990, Tropical and ICA executed the construction contract, and Tropical signed the mortgage note for the loan from ACR.[2] Appellants claim that they orally protested the application of Modification No. 1 to ACR at that time. HUD endorsed the mortgage note and construction began on December 20, 1990.

In May 1991, counsel representing the Tropical Project sought a determination from the DOL that the original FL90–28, and not Modification No. 1, governed the project.[3] On June 28, 1991, due to the incorrect inclusion of wage data from a nonresidential project in Modification No. 1, the DOL issued a corrected wage determination: FL91–28. In August, without an evidentiary hearing, the Acting Administrator of the DOL's Wage and Hour Division ("the Administrator") determined that Modification No. 1 applied to the project and that the challenge was untimely. Upon ICA and Tropical's petition for review, the Wage Appeals Board ("WAB") affirmed. Appellants sought review of the WAB's deci-

sion in the district court; the district court entered summary judgment in favor of the DOL on certain counts and dismissed other claims.

## II.

■ "We review the district court's grant of summary judgment *de novo,* applying the same legal standards used by the district court." *Parks v. City of Warner Robins,* 43 F.3d 609, 612–13 (11th Cir.1995). "Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The Court reviewing the motion must consider the evidence in the light most favorable to the nonmoving party." *Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995).

■ We also review *de novo* a district court's dismissal for failure to state a claim. *See Cryder v. Oxendine,* 24 F.3d 175, 176 (11th Cir.1994). In ruling on a motion to dismiss, the court must accept the allegations of the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.; see also Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993).

Under the Administrative Procedure Act, this court will set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## III.

■ Appellants argue that it is arbitrary and capricious to apply wage rate modifica-

---

1. Although the Wage Appeals Board Decision and Order states that ACR notified Appellants by letter dated November 2, 1990, a copy of which is in the Administrative Record, Appellants aver that there is a question as to whether the letter was received. In any event, Appellants knew about Modification No. 1 prior to the loan's closing.

2. Tropical Village, Inc. signed as General Partner of Tropical Village, Ltd., which owns the Tropical Project.

3. By letter dated February 1, 1991, Tropical earlier had complained to ACR about the application of Modification No. 1, and requested that ACR protest to the DOL.

tion rules designed for the traditional Davis–Bacon competitive bidding scenario in the context of loan coinsurance because they would be forced to pay wages higher than the wage rates on which they estimated their project costs.

HUD may not provide insurance for a project unless the principal contractor files a certificate attesting to the fact that the workers

> have been paid not less than the wages prevailing in the locality in which the work was performed for the corresponding classes of laborers and mechanics employed on construction of a similar character ... as determined by the Secretary of Labor, in accordance with the Davis Bacon Act ... *prior to the beginning of construction and after the date of the filing for insurance.*

12 U.S.C. § 1715c(a) (emphasis added). DOL regulations provide that a modification of a general wage determination is effective, in the case of projects assisted under the National Housing Act, "if notice of such modification is published prior to the beginning of construction or the date the mortgage is initially endorsed, whichever occurs first." 29 C.F.R. § 1.6(c)(3)(ii).[4] Because both the statute and the quoted regulation require that the prevailing wages in effect prior to the beginning of construction shall apply to a project, 29 C.F.R. § 1.6(c)(3)(ii) is consistent with 12 U.S.C. § 1715c.[5] Congress could have provided that the wage rate in effect at the time that a builder calculated its costs would govern projects in the coinsurance

context, but it did not. Absent such a mandate from Congress, we cannot say that the DOL's regulation is "arbitrary, capricious, or clearly contrary to law." *Alabama Power Co. v. F.E.R.C.*, 22 F.3d 270, 272 (11th Cir. 1994).

## IV.

We next address whether the WAB correctly held that Modification No. 1 applied to the Tropical Project.[6] HUD endorsed the mortgage and construction began on December 20, 1990. As Modification No. 1 was published on October 12, 1990, prior to both the beginning of construction and the date the mortgage was endorsed, it governed the project under the explicit terms of the regulations. *See* 29 C.F.R. §§ 1.6(c)(3)(ii), 1.6(c)(3)(vi).

Although Modification No. 1 was applicable, Appellants nevertheless note that the Administrator is empowered under 29 C.F.R. § 1.6(d) to correct clerical errors in wage determinations.[7] They claim that the later revision of Modification No. 1, by the publication of FL91–28 in June 1991, shows that Modification No. 1 was erroneous; hence, the Administrator should have applied FL91–28 retroactively.

■ Modification No. 1 apparently was flawed due to the incorrect inclusion of wage data from a non-residential project. Appellants advance no authority for the proposition that such an error may be deemed "clerical." The WAB declined to address this issue because of its longstanding rule that a timely challenge to a wage determination must be made prior to contract award or prior to the start of construction if there is

4. *See also* 29 C.F.R. § 1.6(c)(3)(vi) ("Modifications or supersedeas wage determinations to an applicable general wage determination published after contract award (or after the beginning of construction where there is no contract award) shall not be effective.").

5. The Supreme Court has emphasized that, in the absence of clear guidance from Congress, courts should defer to an agency's reasonable interpretation of a statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

6. The WAB decision affirmed a ruling by the Acting Administrator that Modification No. 1 applied to the project.

7. 29 C.F.R. § 1.6(d) provides: "Upon his/her own initiative or at the request of an agency, the Administrator may correct any wage determination ... whenever the Administrator finds such a wage determination contains clerical errors. Such corrections shall be included in any bid specifications containing the wage determination, or in any on-going contract containing the wage determination in question, retroactively to the start of construction."

no award. *See Matter of Dairy Development, Ltd.,* WAB Case No. 88–35 (August 24, 1990), [September 1990—March 1992 Transfer Binder] Lab.L.Rep. CCH ¶ 31,973 at 43,-642–43 (protest 7 days after construction began untimely), *aff'd sub nom, Dairy Development, Ltd. v. Pierce,* Civ–86–1353–R (W.D.Okla. February 14, 1991); *Matter of Granite Builders, Inc.,* WAB Case No. 85–22 (January 27, 1986) (applying rule in nonbidding case); *see also* 29 C.F.R. § 1.6(c)(3)(ii).

On the facts of this case, we cannot say that the application of the timeliness rule was improper. Appellants were on notice from the Supplemental Conditions of the Contract that the wage rates could be modified. *See* 29 C.F.R. § 1.6(c)(1) ("Project and general wage determinations may be modified from time to time to keep them current."). Further, they became aware that Modification No. 1 would apply to the project *prior* to the beginning of construction. Although Appellants allege that they objected orally at closing, the regulation clearly states that the Administrator is the appropriate recipient of such a request, which must be in writing.[8] Appellants did not properly request review from the Administrator until May 9, 1991—over four months after construction began. Accordingly, the WAB correctly concluded that Appellants' protest was untimely.[9]

### V.

The court agrees with Tropical and ICA that it seems unfair to apply Modification No. 1 to the Tropical Project. Appellants relied upon FL90–28 in determining the project costs and might well have begun construction prior to the issuance of Modification No. 1, but for HUD's delays in processing the loan application. Furthermore, by issuing FL91–28, the DOL effectively has conceded that Modification No. 1 was substantively incorrect. Nevertheless, the agency's actions were consistent with the applicable regulations and statutes, and sufficient procedures were in place for Appellants to have timely challenged Modification No. 1. We therefore AFFIRM the district court's order.[10]

---

**8.** *See* 29 C.F.R. § 1.8 ("Any interested party may seek reconsideration of a wage determination.... *Such a request for reconsideration shall be in writing accompanied by a full statement of the interested person's views and any supporting wage data or other pertinent information.* The Administrator will respond within 30 days of receipt thereof....") (emphasis added).

**9.** Even though the Supreme Court has made clear that "[t]he correctness of the Secretary's wage rate determination is not subject to judicial review," *Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 761–62 n. 10, 101 S.Ct. 1451, 1457 n. 10, 67 L.Ed.2d 662 (1981) (citing *United States v. Binghamton Const. Co.,* 347 U.S. 171, 177, 74 S.Ct. 438, 441–42, 98 L.Ed. 594 (1954)), Appellants challenge the "methodology" used to calculate Modification No. 1. *See Commonwealth of Virginia v. Marshall,* 599 F.2d 588, 592 (4th Cir.1979) ("Review is limited to due process claims and claims of noncompliance with statu-

tory directives or applicable regulations."). As Appellants did not timely protest the wage rate modification, this argument fails as well.

**10.** Appellants also argue that summary judgment was improperly granted because they were denied the opportunity for discovery. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir.1988) ("[S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery."). The magistrate judge granted a protective order preventing discovery of evidence outside the administrative record on December 9, 1992. Because the record indicates that Appellants failed to file objections to this order within ten days, any such objection was likely waived. *See* Fed.R.Civ.P. 72(a). In any event, on the facts of this case, we see no error in limiting the district court's record on review to the record compiled before the DOL. *See Pollgreen v. Morris,* 770 F.2d 1536, 1545 (11th Cir. 1985).