Mary W. DAVIS, Joseph E. Franell, III, Wilma C. Rearden, Brenda B. Reaves, and Calvin J. Smith individually and on behalf of all others similarly situated, Plaintiffs,

v.

WILLIAMS COMMUNICATIONS, INC., et al.   Defendants.

No. CIV.A. 302CV055WBH.

United States District Court, N.D. Georgia, Newnan Division.

March 18, 2003.

Mark E. Bergeson, Zoe Ileana Martinez, Seth A. Litman, Alembik Fine & Callner, Atlanta, for Mary W. Davis, Joseph E. Franell, III, Wilma C. Rearden, Brenda B. Reaves, Calvin J. Smith, individually and on behalf of all others similarly situated, plaintiffs.

Nisbet Stovall Kendrick, III, Carl Lawrence Meyer, Womble Carlyle Sandridge & Rice, William N. Withrow, Jr., Scott A. Farrow, Troutman Sanders, Atlanta, Steven P. Taub, phv, Crowell & Moring, Washington, DC, for Williams Communications, Inc., Williams Communications Procurement, L.P., Williams Communications, LLC, CSX Transportation, Inc., defendants.

## ORDER

HUNT, District Judge.

Before the Court are Defendant CSX's Motion to Dismiss [3], Motion to Stay Discovery [13], and Motion for Protective Order [24].

### I. Background

Because this case is before the Court on a motion to dismiss, the allegations contained in the Complaint must be accepted as true and the facts must be construed in the light most favorable to the plaintiff. *See ICA Constr. Corp. v. Reich,* 60 F.3d 1495, 1497 (11th Cir.1995). Viewed in this light, the following facts emerge. Plaintiffs Mary Davis, Joseph Frannell, Wilma Rearden, Brenda Reaves and Calvin Smith are owners of residential real estate in West Point, Georgia.[1] Defendants Williams Communications Inc., Williams Communications Procurement L.P., and Williams Communications LLC (collectively "Williams") are companies engaged in the provision and maintenance of fiber optic telecommunications systems throughout North America and the world. Defendant CSX Transportation Inc. ("CSX") is a railroad that possesses right of way surface easements on and over Plaintiffs' land.[2]

Plaintiffs filed this diversity action complaining that Williams trespassed on their

---

1. Plaintiffs bring this action on their behalf and as representatives of a class of similarly situated persons.

2. For the purposes of this motion the Court will accept Plaintiffs' position, which is contested by CSX, that CSX's rights of way on Plaintiffs' land are surface easements limited to purposes necessary to the operation of a railroad.

land by illegally excavating and laying fiber optic cable under CSX's right of way easements, without seeking permission from, or compensating Plaintiffs. With respect to CSX, Plaintiffs seek to disgorge CSX of "millions of dollars in rents, profits, compensation, and other benefits" which CSX acquired unjustly by allowing Williams to install and maintain the cable lines. Plaintiffs raise the following claims against CSX: unjust enrichment, interference with sub-surface rights, negligence, and punitive damages. Plaintiffs also seek a Court order declaring illegal Defendants' operation of the fiber optic cable networks and requiring CSX and Williams to remove the cable. CSX has filed the present motion to dismiss for failure to state a claim upon which relief may be granted, arguing that, as a matter of law, railroads cannot be held liable to serviant landowners for allowing telecommunications companies to lay lines over, under and along railroad rights of way.

## II. Analysis

### Motion to Dismiss Standard

A district court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Powell v. United States*, 945 F.2d 374, 375 (11th Cir.1991). In evaluating a motion to dismiss for failure to state a claim, a court must accept as true all allegations contained in the complaint and must view the complaint in the light most favorable to the plaintiff. *See ICA Constr. Corp. v. Reich*, 60 F.3d at 1497. While the Court must weigh every inference in plaintiff's favor, however, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not pre-

vent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir.1983). Thus, a court can dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only when a plaintiff "can prove no set of facts which would entitle him to relief." *Martinez v. American Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir. 1996).

### Plaintiffs' claims against CSX

Each of Plaintiffs' claims against CSX is premised on the determination that CSX lacked authority to enter into the agreement with Williams to lay the cable, and CSX should not be allowed to benefit from such unauthorized agreement. Relying primarily on O.C.G.A. § 46–5–1(a) and *Tompkins v. Atlantic Coast Line R. Co.*, 89 Ga.App. 171, 79 S.E.2d 41 (1953), CSX argues that both Georgia statutory law and long-established case law support its position that railroads cannot be held liable to serviant landowners under these circumstances.

Georgia code section 46–5–1 gives telephone companies the right to construct, maintain and operate their lines along railroad rights of way, and grants these companies the power of eminent domain to do so:

Upon making due compensation, a telegraph or telephone company shall have the right to construct, maintain, and operate its lines through or over any lands of this state; on, along, and upon the right of way and structures of any rail-

roads; and, where necessary, under or over any private lands; and, to that end, a telegraph or telephone company may have and exercise the right of eminent domain.

O.C.G.A. § 46–5–1(a). When enforcing these rights against a railroad through condemnation proceedings, the telephone company must notify the railroad, but need not notify the underlying landowner:

> Notice of condemnation shall be served upon the railroad company in the manner provided for the service of other actions upon railroad companies. It shall not be necessary to serve such notice upon any person or corporation other than the railroad company in possession of and operating the railroad whose right of way is sought to be condemned by the telegraph or telephone company for its use; and only the interest of such railroad company so served shall be affected by the proceedings.

O.C.G.A. § 22–3–2. The fact that a telephone company chooses to acquire by contract, rather than by eminent domain, the right to place its lines upon the railroad's right of way, does not render the railroad company liable for an alleged failure to compensate the serviant landowner. *See Tompkins,* 89 Ga.App. at 177–78, 79 S.E.2d at 45 (dismissing action against railroad where the railroad contracted with telephone company to allow telephone lines along its right of way and was compensated $500 per year as consideration for allowing the phone lines).

Relying upon *Tompkins,* CSX asserts that the law required it to allow Williams

to lay its cable lines. Rather than forcing a condemnation proceeding, CSX lawfully entered into a contract with Williams to allow the installation, maintenance, and operation of the lines. Plaintiffs do not dispute that *Tompkins* would control if Williams was a telephone company with the power of eminent domain. Rather, Plaintiffs argue that (1) Williams is not a telephone company entitled to the power of eminent domain under O.C.G.A. § 46–5–1; and (2) Williams did not act pursuant to the power of eminent domain because it never obtained a required Certificate of Authorization to exercise such a power.[3] The Court will address each of these contentions in turn.

**1. Whether Williams is a "telegraph or telephone company"**

■ Plaintiffs argue that because Williams provides services other than voice communication, such as advertising distribution, streaming communications, and Internet access, it is not a "telephone company." Citing a definition of "telephone company" from an unrelated section of the Code, Plaintiffs argue that to be a telephone company the principal intended use of the company must be to transmit voice communication. *See* O.C.G.A. § 46–5–62(4), (5). CSX responds, and the Court agrees, that the definition relied upon by Plaintiffs does not control because it is included in the provisions for Rural Telephone Cooperatives and is expressly limited to use in such provisions. *See* O.C.G.A. § 46–5–62 (limiting the definition to use "in this part"). Plaintiffs admit in their

---

**3.** Plaintiffs also appear to argue, without authority, that the "outdated" laws concerning telephone lines should not apply to the creation of a global fiber optic cable network because the creation of such a network "has nothing to do with the public good." Be-

cause Plaintiffs have directed the Court to no legal authority for a district court to consider the "public good" as a factor in a case such as this, the Court will not address this argument.

Complaint that Williams serves millions of customers by, among other things, transmitting voice telecommunications. Other than the expressly limited definition set forth above which the Court finds to be inapplicable, Plaintiffs have cited no authority for their assertion that the fact that Williams transmits more than traditional voice communications takes it outside the realm of § 46–5–1(a). Moreover, Plaintiffs' argument is further weakened by the fact that Williams, in fact, obtained a Certificate of Authorization, as discussed below, which demonstrates that the Georgia Public Service Commission considers Williams' to be a telephone company with the authority to exercise eminent domain under § 46–5–1(a), despite the fact that Williams provides services other than voice communications.

## 2. Whether Williams obtained a Certificate of Authorization

The Georgia Public Service Commission ("PSC") has the authority to issue a Certificate of Authority to Construct or Operate a Telephone Line, Plant or System. *See* O.C.G.A. § 46–5–41 (providing that "no person shall construct or operate any telephone line .. without first obtaining from the Public Service Commission a certificate that the present or future public convenience and necessity require or will require such construction, operation, or acquisition."). The parties do not dispute that once a Certificate of Authority has been issued to a company, the company has the power of eminent domain. *See* O.C.G.A. § 46–5–1.

Attached to CSX's reply is a certified copy of a Certificate of Authority, issued by the PSC on July 17, 1997, which grants

Williams authority to become an inter-LATA interexchange facilities-based carrier operating within the State of Georgia. In that document, the PSC makes an express finding of fact that Williams "is a long-distance telecommunications carrier ... [that] provides interstate telecommunications services, including private line offerings." [4]

■ Plaintiffs attempt to avoid dismissal by raising a procedural argument. Plaintiffs contend that the Court must accept as true their allegations that CSX acted unlawfully and may not go beyond the pleadings to inquire into whether Williams actually satisfied the statutory prerequisites of eminent domain. The Court disagrees. Federal Rule of Evidence 201 allows the Court to take judicial notice of official public records. The Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1279–80 (11th Cir.1999)(taking judicial notice of public records on file with the Securities and Exchange Commission); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.2001) (stating that courts may take judicial notice of undisputed matters of public record but may not take judicial notice of disputed facts stated in public records). Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt.*, 297 F.3d at 1188.

■ In light of the public records provided by Williams, it appears that Williams

---

**4.** The Certificate of Authority is issued to Vyvx, Inc., which is Williams' predecessor. CSX has also attached a certified amendment to that Certificate of Authority ordering that the certificate be amended to reflect the name change to Williams Communications, L.L.C.

does in fact have the power of eminent domain to construct its communication lines along CSX's rights of way and had that power at the time it contracted with CSX. Accordingly, under *Tompkins,* CSX cannot be held liable to Plaintiffs merely because the parties elected to proceed through contract rather than through a condemnation proceeding. Thus, Plaintiffs have failed to state a claim upon which relief can be granted against CSX because CSX was authorized, and in fact required, to allow Williams to lay, maintain, and operate its fiber optic cable under CSX's right of way. Accordingly, CSX's motion to dismiss each of Plaintiffs' claims is granted.

## CONCLUSION

Defendant CSX's Motion to Dismiss [3] is GRANTED. CSX is hereby DISMISSED as a defendant in the above captioned action. CSX's motion to stay discovery [13] and motion for a protective order [24] are DENIED as moot.