Doris WILLIAMS, Plaintiff,

v.

Heather J. EDELMAN; Katzman & Korr, P.A., a Florida corporation; Foxcroft Condominium Apartments, Inc., a Florida corporation; and Goldman, Juda & Martin, P.A., a Florida corporation, Defendants.

No. 05–60653–CV–ALTONAGA, 05–60653–CV–TURNOFF.

United States District Court, S.D. Florida, Miami Division.

Dec. 28, 2005.

1262

Peter Loblack, Law Office of Peter Loblack, P.A., for the Plaintiff.

Lewis N. Brown, Dyanne E. Feinberg, and Douglas J. Jeffrey, of Gilbride, Heller & Brown, P.A., for Defendant Goldman, Juda & Martin, P.A.

Mark M. Heinish, of Katzman & Korr, P.A., for Defendant Heather J. Edleman and Katzman & Korr, P.A.

Barry Postman, Esq., of Cole Scott & Kissane, P.A., for Defendant Foxcroft Condominium Apartments, Inc.

### ORDER ON MOTIONS TO DISMISS

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Goldman, Juda & Martin, P.A.'s ("Goldman['s]") Motion to Dismiss First Amended Complaint, filed on October 31, 2005 [D.E. 39], and Defendants, Heather J. Edelman ("Edelman") and Katzman & Korr, P.A.'s ("Katzman['s]") Motion to Dismiss First Amended Com-

plaint, filed on November 4, 2005 [D.E. 42]. The Court has carefully considered all written submissions and applicable law.

## I. BACKGROUND

After the Court granted, in part, Defendants' Motion to Dismiss Plaintiff, Doris Williams' ("Williams['']") original Complaint, Plaintiff filed a four-count First Amended Complaint ("FAC") on October 11, 2005 [D.E. 35] which the two Motions seek to dismiss. Williams alleges that she has owned and resided in a condominium apartment in the Foxcroft Condominium development since February 2004. (*FAC* ¶ 8). Upon purchasing her condominium, Williams paid all condominium maintenance assessments in arrears. (*Id.* at ¶ 9). Williams has allegedly continued to pay Goldman, the firm hired by Defendant, Foxcroft Condominium Apartments, Inc. ("Foxcroft"), to collect monthly maintenance assessments, the assessment fees in full since purchasing the condominium. (*Id.* at ¶¶ 10, 11).

Notwithstanding Plaintiff's full payment of her condominium fees, she received a letter on October 29, 2004, demanding payment of $472.27 in past due assessments and $95 in attorney's fees. (*Id.* at ¶ 11). Although Williams contested the validity of the demand, on December 7, 2004 Defendants filed a lien claim for $2,772.70 in delinquent maintenance assessments.[1] (*Id.* at ¶ 12). Subsequently, on February 3, 2005, Defendants initiated a breach of contract and foreclosure action in Broward County in Case No. 05–01390–COWE. (*Id.* at ¶ 13).

Williams alleges three separate violations of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Count I of the FAC alleges that Edelman, Katzman and Goldman violated 15 U.S.C. § 1692f(1), "by attempting to collect an amount not authorized by the agreement creating the debt." (*FAC* ¶ 17). Count II alleges that Edelman, Katzman and Goldman violated 15 U.S.C. § 1692e(2)(A) by "making false representations of the amount owed." (*Id.* at ¶ 22). Count III, also asserted against Edelman, Katzman and Goldman, alleges a violation of 15 U.S.C. § 1692g based upon Defendants' failure to provide Plaintiff with the statutorily mandated written notice. (*Id.* at ¶ 23). Count IV alleges that all Defendants engaged in unfair and deceptive practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*

Goldman argues that the FAC must be dismissed because: (1) Goldman is exempt from the FDCPA's definition of "debt collector;" (2) Plaintiff has merely stated legal conclusions that fail to satisfy the pleading requirements of the Federal Rules of Civil Procedure; (3) delinquent condominium assessments are not "consumer transactions" as contemplated by the FDUTPA; and (4) there is no secondary or aiding liability under the FDCPA or FDUTPA.[2] Katzman and Edelman argue that the FAC must be dismissed because: (1) condominium assessments are not "debt" as defined by the FDCPA; (2) Edelman and Katzman are "not debt collectors" under the FDCPA; (3) the FAC fails to plead

---

1. Plaintiff received a letter from Defendants on the same date informing her that a lien had been filed in the amount of $1,326.37. The FAC contains no explanation for the discrepancy.

2. Goldman's fourth argument is wholly unsupported by the FAC's allegations. In its

Motion, Goldman cites portions of the FAC in which Plaintiff alleges that Defendants were involved in a "joint scheme." However, the FAC also alleges that Goldman took specific actions, and granted specific authorizations, in connection with the allegedly unlawful debt collection activities. (*See, e.g., FAC* ¶¶ 11–13, 17, 20, 23).

facts and circumstances with sufficient specificity; and (4) each individual count fails to allege facts upon which relief may be granted.

## II. *ANALYSIS*

### A. Legal Standard on a Motion to Dismiss

"Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993) (citations omitted). "In ruling on the motion to dismiss the district court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 954 (11th Cir.1986). "When the allegations contained in a complaint are wholly conclusory, however, and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir.1980).

Generally, "the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Crowell v. Morgan Stanley Dean Witter Services, Co.*, 87 F.Supp.2d 1287, 1290 (S.D.Fla. 2000). However, "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Davis v. Williams Communications., Inc.*, 258 F.Supp.2d 1348, 1352 (N.D.Ga.2003) (citing *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1279–80 (11th Cir.1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.2001)). Moreover, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002).

### B. Goldman is not a Debt Collector under the FDCPA

█ The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the statute exempts "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement [or] concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F). Goldman claims that the FAC's allegations demonstrate that it has attempted to collect the debt pursuant to a *bona fide* fiduciary obligation[3] and that the debt was not in default at the time it obtained the debt.

---

3. The issue of whether Goldman attempted to collect the debt pursuant to a fiduciary obligation involves issues of fact that the Court may not resolve at this juncture.

Courts have dismissed FDCPA claims on motions to dismiss where the allegations make clear that the debt in question was not in default at the time of the defendant's collection efforts. In *Azar v. Hayter*, 874 F.Supp. 1314 (N.D.Fla.1995), a case also involving a dispute over condominium assessments, the court dismissed the complaint based, in part, upon the lack of any "indication that [defendants] obtained the debt after it was past due." The court thus found that the statutory exception provided by 15 U.S.C. § 1692a(6)(F)(iii) applied. *Id.* at 1319.

Likewise, in *Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250 (S.D.N.Y. 1998), plaintiff brought a FDCPA action against a management company based upon its attempted collection of a rent payment. The court dismissed the complaint, relying upon the rental agreement documents attached to the complaint to conclude that "[i]t is clear … that [defendant] had not only the right but also the obligation to collect [plaintiff's] rent before as well as after such debt was 'in default.' " *Id.* at 253. The court also explicitly rejected plaintiff's argument that the exception only applied if the collector obtained ownership of the debt. *Id.* at 254.

Similarly, in *Dawson v. Dovenmuehle Mortgage, Inc.*, No. 00-CV-6171, 2002 WL 501499 (E.D.Pa.2002), the plaintiff alleged that the defendant mortgage servicing firm violated the FDCPA by falsely trying to collect attorney's fees. However, because the complaint alleged that the loan was never in default, and because it further alleged that the defendant serviced the mortgage all along, the court found that defendants were exempt under the FDCPA. *Id. See also Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed.Appx. 458, 459 (5th Cir.2004) (upholding district court's decision that FDCPA did not apply in the absence of allegations that loans were in default at the time of servicing);

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir.2003) ("If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor" and the acquirer is not subject to the FDCPA provisions"); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958–59 (7th Cir.1997) (holding that defendant was not a debt collector because "while [it] does collect money owed … it does not acquire those debts after they are in default); *Porter v. Fairbanks Capital Corp.*, No. 01-CV-9106, 2002 WL 31163702 (N.D.Ill.2002) (dismissing claim because plaintiff failed to allege that debt was in default at the time it was acquired by defendant).

Not only does the FAC fail to allege that the debt was in default at the time of Goldman's initial collection efforts, it specifically alleges that the debt was *not in default*. Williams alleges that as the condominium assessment fees became due, the "fees were mailed to Goldman, which was hired by Foxcroft to collect the monthly Condo maintenance assessment from the unit owners." (*FAC* ¶ 11). The FAC further alleges that Plaintiff *paid the fees to Goldman on time.* (*Id.*).

In her Response Memorandum, Plaintiff does not directly address Goldman's argument that it is exempt because it serviced the debt prior to any default. She seemingly argues that her allegation that Goldman is a "debt collector" satisfies her pleading requirements. However, the Court need not accept legal conclusions, masquerading as facts, as true. *See Day v. Taylor*, 400 F.3d 1272,1277 (11th Cir. 2005). Moreover, Williams' allegation that Goldman has "used interstate commerce and the mail to regularly collect, or attempt to collect, consumer debts owed or

due to other entities" (*FAC* ¶ 6) is irrelevant to resolution of the issue. The statute specifically exempts entities that obtain current debts, notwithstanding the fact that they regularly collect consumer debts and would otherwise be subject to the statutory proscriptions. *See* 15 U.S.C. § 1692a(6)(F).

The FAC states that Plaintiff paid her debts to Goldman as they become due; accepting this allegation as true demonstrates that Goldman began servicing the debts before they were in default. Therefore, Goldman is not a debt collector as defined by the FDCPA and Plaintiff does not state a FDCPA claim against Goldman.

### C. FDCPA Claims Against Edelman & Katzman

Edelman and Katzman initially argue that all FDCPA claims must be dismissed because they are not "debt collectors" as defined by the FDCPA and because condominium assessments are not considered "debt" under the FDCPA. They further argue that even if they are "debt collectors" and condominium assessments constitute "debt," each individual count fails to state a cause of action under the FDCPA.

### 1. *The Court Cannot Determine whether Edelman and Katzman are "Debt Collectors."*

Edelman and Katzman argue that they were hired by the condominium association's board of directors to collect the condominium fees. They conclude that because the board of directors owes a fiduciary obligation to all members of the condominium association, they owe the same fiduciary obligation as agents of the condominium association. Expressing no opinion on Edelman and Katzman's tenu-

ous legal argument (they cite no case law for their proposition), their argument requires the Court to engage in factual inquiries extraneous to the FAC. Because the Court's analysis on a motion to dismiss is limited to the four corners of the complaint (and any attached exhibits), it would be premature and incorrect for the Court to resolve the issue at this stage of the litigation.

### 2. *Condominium Assessments are Debt within the Meaning of the FDCPA.*

Edelman and Katzman also argue that condominium assessments are not "debt" under the FDCPA.[4] The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Notwithstanding Plaintiff's allegations that she purchased the condominium as her "personal residence," Defendants assert that the case law provides that condominium assessments may never constitute "debt" under the FDCPA.

Defendants rely almost exclusively upon *Azar v. Hayter*, 874 F.Supp. 1314, 1318–19 (N.D.Fla.1995), to support their argument. The *Azar* court reasoned that in the absence of a *"pro tanto"* exchange, condominium assessments are not "debt" under the FDCPA. *Id.* at 1318–19. The Eleventh Circuit affirmed the decision without opinion. 66 F.3d 342 (11th Cir.1995). Because the *Azar* court also determined that the plaintiff failed to allege that defendants were "debt collectors" within the

---

4. Defendants raised the same argument in their Motion to Dismiss Plaintiff's original Complaint. The Court's October 5, 2005 Or-

der [D.E. 34] expressly declined to resolve the issue.

meaning of the FDCPA, the Eleventh Circuit's summary affirmance is of minimal probative value in resolving the present question.

While the Eleventh Circuit has not directly overruled *Azar*, its reasoning in *Brown v. Budget Rent–A–Car Systems, Inc.*, 119 F.3d 922 (11th Cir.1997) suggests that *Azar's* holding no longer represents good law. Whereas *Azar* held that a plaintiff must demonstrate the existence of a *pro tanto* exchange before a "debt" is created under the FDCPA, *Brown* specifically rejected the contention that an extension of credit is required to meet the FDCPA's definition of "debt." *Id.* at 924.

Other courts within this Circuit that have considered the question subsequent to the *Azar* decision have held that condominium assessments and analogous fees constitute "debts" under the FDCPA. In *Agan v. Katzman & Korr*, No. 03–CV–62145, 2004 WL 555257, at *1 (S.D.Fla., March 16, 2004), the court held that condominium assessments are "debt" under the FDCPA, reasoning that "[a]s long as a transaction creates an obligation to pay, a debt is created for purposes of the FDCPA." *Id.* (*citing Brown v. Budget Rent–A–Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir.1997)). Importantly, the court acknowledged, and rejected, *Azar's* contrary holding. Likewise, in holding that assessments for interest in an RV park were "debt" under the FDCPA, a Middle District of Florida court explicitly declined to follow *Azar*, noting that "the Eleventh Circuit has not yet specifically addressed this issue." *Fuller v. Becker and Poliakoff, P.A.*, 192 F.Supp.2d 1361, 1367 (M.D.Fla.2002); *see also Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D.Fla.2004) (certifying a class of plaintiffs who had allegedly received letters stating that they owed condominium association fees in violation of the FDCPA).

Several circuit courts that have considered the question have similarly held that condominium assessments, and similar obligations, are "debt" under the FDCPA. *See Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir.2005) (assessments for delinquent water and sewer assessments are "debt"); *Ladick v. Van Gemert*, 146 F.3d 1205 (10th Cir.), *cert. denied*, 525 U.S. 1002, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998) (condominium assessment constitutes a debt under the FDCPA); *Newman v. Boehm, Pearlstein and Bright, Ltd.*, 119 F.3d 477, 482 (7th Cir.1997) (same). Furthermore, nearly all published opinions of district courts considering the question (sitting in districts where the circuit court has not yet considered the question) have reached the same conclusion. *See Garner v. Kansas*, No. 98–CV–1274, 1999 WL 262100, at *2 (E.D.La.1999) (adopting the Seventh Circuit's logic in holding that condominium fees are "debts" under the FDCPA); *Caron v. Charles E. Maxwell, P.C.*, 48 F.Supp.2d 932, 934 (D.Ariz.1999) (holding that condominium fees are "debts," and noting that "the United States Courts of Appeals which have considered the issue of whether homeowners' association fees constitute a debt under the FDCPA have concluded [they do]"); *Thies v. Law Offices of William A. Wyman*, 969 F.Supp. 604, 608 (S.D.Cal.1997) (explicitly rejecting the *Azar* court's requirement of a *pro tanto* exchange in finding that condominium fees constitute "debt").

■ The overwhelming legal authority is persuasive. Moreover, "[t]he purpose of the FDCPA is to 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Brown*, 119 F.3d at 924

(quoting 15 U.S.C. § 1692(e)). To this end, the FDCPA broadly defines "debt." *See id.* There is no reason to artificially limit the deceptive practices prohibited by the FDCPA to transactions involving the extension of credit. Because Plaintiff alleges that the condominium is her "personal residence" (*FAC* ¶ 8) and, for the reasons stated above, Plaintiff has alleged the existence of a "debt" under the FDCPA.

### 3. Count I States a Cause of Action Against Katzman and Edelman.

■ Count I alleges that Edelman and Katzman violated 15 U.S.C. § 1692f(1) "by *attempting* to collect an amount not authorized by the agreement creating the debt, as no such amount was due and owing at the time of filing the lien and/or instituting the collection lawsuit." (*FAC* ¶ 17) (emphasis added). The relevant provision states that "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," violates the FDCPA. 15 U.S.C. § 1692f(1). Edelman and Katzman argue that the statutory provision only proscribes the *actual collection,* as opposed to the *attempted collection,* of funds not authorized by agreement or the law. They further argue that because the Declaration of Condominium, attached as an exhibit to the FAC, "expressly authorized" the collection of the debt, Plaintiff's claim fails.

Although 15 U.S.C. § 1692f(1) prohibits "the collection" of a debt, the heading of § 1692f, governing the entire section, states that "[a] debt collector may not use unfair or unconscionable means to collect *or attempt to collect* any debt." 15 U.S.C. § 1692f. Moreover, in enumerating the types of conduct that constitute "unfair or unconscionable means," the language explicitly provides that the list of proscribed practices (of which 15 U.S.C. § 1692f(1) is included) is not exclusive.

In *Sandlin v. Shapiro & Fishman,* 919 F.Supp. 1564 (M.D.Fla.1996), the court addressed, and soundly rejected, Defendants' argument. The *Sandlin* court held:

> the statute plainly states that an "attempt to collect" an unauthorized debt is as forbidden as the actual collection would be. This is the plain reading of the statute, and it is the meaning that accomplishes the goals of Congress, because it fulfills their purpose of protecting the debtor from unfair collection practices, including attempted collection of unauthorized debts.

*Id.* at 1568; *see also Egge v. Healthspan Services Co.,* No. 00–CV–934, 2001 WL 881720, at *1 (D.Minn.2001) ("it is a violation of § 1692f *to attempt* to [collect] any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law") (emphasis added) (internal quotations, citation omitted).

Defendants cite the maxim of statutory interpretation, *"inclusio unius est exclusio alterius"* to support their argument. Although Defendants correctly note that the inclusion of one is generally to the exclusion of another, the rule is a default rule of statutory construction capable of congressional abrogation. In the case of the FDCPA, *Congress expressly altered the default rule,* stating that the list of prohibited practices does not "[limit] the general application of the" ban on the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Defendants also argue that the Declaration of Condominium expressly permits the collection of maintenance fees.[5] Defendants conclude that because the "amount is

---

**5.** The Declaration of Condominium is attached as an exhibit to the state law action

brought against Plaintiff, which Plaintiff has, in turn, attached as Exhibit 9 to the FAC.

expressly authorized by the agreement creating the debt," they have not violated 15 U.S.C. § 1692f. Implicit in Defendants' argument is the assertion that this action merely alleges a dispute over whether Plaintiff paid her condominium fees. While that is one reasonable characterization of Plaintiff's claim (perhaps the most reasonable), another reasonable inference drawn from the FAC is that Defendants attempted to collect a debt not authorized by the Declaration of Condominium. In other words, fairly read, Defendants may have been fully aware that Williams paid her fees but, nonetheless, attempted to collect additional fees or interest not authorized by the Declaration of Condominium.[6]

The FDCPA bans attempts to collect any *"amount"* that is not authorized by the instrument creating the debt. Thus, a defendant may not escape liability merely by demonstrating the existence of a valid obligation.[7] *See, e.g., Thompson v. CIT Group/Consumer Finance, Inc.,* No. 05–CV–1197, 2005 WL 2562606 (M.D.Fla.2005) (although parties did not dispute existence of underlying debt, claim allowed to proceed where defendants allegedly attempted to collect a greater amount than authorized); *Sandlin,* 919 F.Supp. at 1564–70 (recognizing cause of action for attempt to collect fees where the debt agreement did not permit the collection of such fees). Count I sufficiently states a claim against Edelman and Katzman.

4. *Count II States a Cause of Action Against Katzman and Edelman.*

█ Count II alleges a violation of 15 U.S.C. § 1692e(2)(a), which bans "the false representation of the character, amount or legal status of any debt" in connection with the collection of such debt. The statutory language clearly contemplates a cause of action based upon a debt collector's misrepresentation of the "character, amount or legal status" *of an actual debt.* 15 U.S.C. § 1692e(2)(a). Similar to their argument for dismissal of Count I, Defendants argue that it is clear from the FAC that this is a dispute over whether a debt was paid, incapable of serving as the basis for Plaintiff's FDCPA claim.

Defendants rely almost exclusively on the holding of *Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp.2d 496 (E.D.N.Y.2002), to support their conclusion. Accepting, without deciding, that the court's holding "that where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt" was correct (*Id.* at 501), the facts of this case are distinguishable from those of *Bleich.* In *Bleich,* the plaintiff received a letter (in compliance with the FDCPA requirements) from the defendant debt collector regarding a debt that she had already paid. In response, plaintiff filed her FDCPA suit, without ever contacting the defendant. *Id.* at 498.

The alleged facts here vary considerably from those in *Bleich.* In contrast to *Bleich* where plaintiff filed suit in response to the debt collector's letter, Williams alleges that, prior to initiating this action, she "contested the demand and provided

---

6. That Defendants allegedly characterized the payments as "past due" is not dispositive, especially given the FAC's allegation that the prior payments were known to the Defendants. (*FAC* ¶ 13).

7. Based upon the Court's reading of the FAC, the Court need not resolve the question of whether the attempt to collect a debt that is authorized, but already paid, may serve as the exclusive basis for a claim under 15 U.S.C. § 1692f(1).

the Defendants with canceled checks and bank statements evidencing her prior payments." (*FAC* ¶ 11). Nonetheless, Defendants placed a lien against Plaintiff's property and instituted legal action in state court. (*Id.* at ¶ 12).[8] Moreover, whereas the plaintiff in *Bleich* filed her suit in response to the defendant's letter, and the letter alone, here Plaintiff filed her suit in response to the letter, a lien placed upon her property, and Defendants' filing of a suit against her. Finally, it is important to note that *Bleich* was decided on summary judgment after development of the factual record.

Given the procedural posture of this case, Defendants' argument boils down to an assertion that where a debt collector has complied with the notice requirements of the FDCPA, a plaintiff may not prosecute a claim under 15 U.S.C. § 1692e(2)(a). The argument goes too far.

When read in the light most favorable to Williams, she has alleged that although she paid her debt, Defendants nevertheless continued to insist that she owed money (and attempted to collect the money), a claim that may fairly be characterized as alleging a misrepresentation of the "amount" and/or "status" of the debt. Defendants fail to point to any statutory language or case law that suggests that knowing misrepresentations, whether made in initial communications with a consumer or otherwise, are not actionable so long as the debt collector's initial letter otherwise meets the FDCPA notice requirements. Moreover, Plaintiff's acknowledgment of the agreement with Foxcroft pursuant to which she is required to pay maintenance fees is irrelevant, as the FDCPA prohibits misrepresentations pertaining to both valid and invalid debts.

Defendants further argue that even assuming Williams has otherwise stated a cause of action, the FAC and its exhibits demonstrate that the error was unintentional and Defendants may not be held liable. The FDCPA provides that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). A complaint, however, may only be dismissed "when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir.2001).

The FAC states that although Williams timely paid the condominium fees to Goldman, Goldman failed to acknowledge the payment, eventually referring Plaintiff to Katzman and Edelman. Therefore, Defendants argue that the FAC demonstrates that to the extent they erred, they erred in good faith reliance upon Goldman's representations. Accepting Defendants' assertion that the allegations in the FAC compel the conclusion that Defendants' initial attempts to wrongfully collect the debt were unintentional, dismissal would still be inappropriate. The FDCPA's affirmative defense also requires that Defendants demonstrate that they maintained "procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Particularly given Plaintiff's allegation that she informed Defendants of the mistake and they nevertheless persisted in their collection efforts, the pleadings do not compel the conclusion that Defendants maintained reasonable procedures to avoid erroneous collection efforts.

---

**8.** Defendants argue that Williams has not specifically alleged that she has availed herself of the statutory procedures for contesting a debt under the FDCPA. The FAC, however, states that she "contested" the debt. (*FAC* ¶ 11).

For the reasons stated above, Count II states a cause of action against Edelman and Katzman.

5. *Count III Does not State a Cause of Action Against Katzman or Edelman.*

■ Count III alleges that Defendants violated 15 U.S.C. § 1692g by "failing to provide the Plaintiff with the specific written notice required by statute." (*FAC* ¶ 23). The FDCPA requires that, within five days of initially communicating with a consumer about a debt, a debt collector must provide the consumer with a written notice containing:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Defendants contend that the allegations in the FAC, when read in conjunction with the exhibits, demonstrate that Plaintiff fails to state a claim. The FAC alleges that, "[a]s their *first step to initiating legal action,* [Edelman and Katzman], by letter dated October 29, 2004, informed Plaintiff that she owed past due Condo maintenance assessments ...." (*FAC* ¶ 11) (emphasis added). Williams also attaches a photocopy of the letter as an exhibit to the FAC. Defendants argue that because the letter fulfills the requirements prescribed by 15 U.S.C. § 1692g, Plaintiff's claim of inadequate notice fails.

Williams maintains that courts have recognized FDCPA actions even where all of the requirements of Section 1692g have technically been met. While accurate, the proposition does not address the issue presented. Courts have recognized FDCPA claims where a defendant has provided notice that satisfies the letter, but not the spirit, of the FDCPA requirements. *See Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996). These cases have been concerned with protecting the "unsophisticated consumer." Here, however, Plaintiff has attached a copy of the letter and, as a matter of law, it fully complies with the FDCPA in a straightforward, understandable manner. Thus, case law holding that technical compliance is not always sufficient to satisfy § 1692g is irrelevant to the current pleading which shows that the notice satisfied each requirement of the FDCPA in a straightforward manner, containing no additional or confusing surplusage.[9]

---

9. The letter references the source of the debt and the amount owed (broken down into the "delinquent balance" and the "attorney collection fee"). It further states the following:
Unless, within Thirty (30) days after your receipt of this letter, you dispute the validity of the aforesaid debt (or any portion thereof) owed to the association, this office shall assume the debt to be valid. If you notify this office in writing within the Thirty (30) day period that the aforesaid debt (or any portion thereof) is disputed, this office shall obtain written verification of the debt from the association and mail same to you.
(*FAC*, Ex. 6).

The FDCPA also requires that notice be provided "[w]ithin five days after the *initial communication* with a consumer." 15 U.S.C. § 1692g(a) (emphasis added). Plaintiff alleges that the letter was sent as the "first step to initiating legal action." (*FAC* ¶ 11). Defendants argue that this language compels the conclusion that the letter represented the first communication between Defendants and Plaintiff. As this matter comes before the Court on Defendants' Motion to Dismiss, it is incumbent upon the Court to determine whether Defendants' interpretation of the language is the only reasonable interpretation, or, alternatively, whether it is possible that, although the letter represented the initiation of legal action, there were actually communications that occurred between the parties at least five days prior to receipt of the letter.[10]

Williams does not reference any communications with the Defendants prior to her receipt of the above-mentioned letter. In fact, any reasonable reading of the FAC compels the conclusion that the letter was the first communication between the parties. The FAC states, "Goldman ... referred the Plaintiff to Katzman & Korr for further collection efforts .... As their first step to initiating legal action," Defendants sent the letter. (*FAC* ¶ 11). Because the letter complies with the temporal and written requirements of 15 U.S.C. § 1692g as a matter of law, Count III fails.

---

10. Plaintiff's Response Memorandum does not address the argument.

11. Defendants also argue that because Plaintiff alleges that violations of the FDCPA constitute violations of the FDUTPA, and insofar as the FDCPA claims fail, the FDUTPA claims must also fail. First, given the foregoing disposition of the FDCPA issues, the argument could only possibly apply to Defendant Goldman. Moreover, Plaintiff cites conduct that she alleges would violate the FDUTPA independent of any FDCPA violations. Therefore, Defendants' argument is rejected.

## D. FDUTPA Claims

Williams alleges that all Defendants violated the FDUTPA by improperly filing suit against her and improperly filing a lien against her property, notwithstanding their knowledge that she did not owe any money, in a scheme to collect unearned attorney's fees. Defendants argue that the FDUTPA claim must be dismissed because: (1) the purchase of condominium units is not a "consumer transaction" and is thus not actionable under the FDUTPA; and (2) the parties have not directly transacted any business with each other.[11]

The FDUTPA permits "any action [for damages] brought by a person who has suffered a loss as a result of a violation of" the FDUTPA. Fla. Stat. § 501.211(2). A plaintiff, however, may not bring "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). In the past, courts had strictly construed the meaning of "consumer transaction," holding that the term did not include real estate transactions. However, the definition of "consumer transaction" was deleted from the statute in 1993.[12] *See Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 96–CV–29, 1998 WL 182418 (M.D.Fla. 1998) (recognizing the wholesale changes to the FDUTPA and calling into question the validity of cases decided prior to the

---

12. Prior to the 1993 amendments, the statute defined consumer transaction as:

'Consumer transaction' means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions.

amendments). The current FDUTPA broadly defines "consumer," as "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla. Stat. § 501.203(7). The statute does not define "transaction."

■ Notwithstanding Defendants' arguments to the contrary, as the statute is currently worded, the purchase of a condominium constitutes a "consumer transaction." As an "individual," Williams certainly falls within the statutory definition of "consumer." Given the amendment of the statute to delete the formerly restrictive definition of "consumer transaction" and the legislature's admonition that "[t]he provisions of [the statute] shall be construed liberally to promote" its underlying policies,[13] Plaintiff's purchase of the condominium is a "transaction" within the meaning of the FDUTPA. Moreover, and although under a different set of facts, the Florida Fourth District Court of Appeals recently affirmed the jury verdict in a FDUTPA claim concerning a real estate transaction. *See Beacon Property Management, Inc. v. PNR, Inc.*, 890 So.2d 274 (Fla. 4th DCA 2004).

Without citing to any authority, Defendants contend that the statutory amendments were not meant to expand the scope of consumer protection to include real estate transactions, but were meant to expand the rights of businesses under the Act. Defendants then direct the Court to cases from other states, interpreting vastly different statutes, holding that real estate transactions are not covered by the statute. The argument does not persuade. Defendants' unsupported protestations concerning the justification for the amendments cannot overcome the plain words of the statute. Moreover, the case law cited from other states interprets statutory language that is not analogous to the language of the FDUTPA. *See, e.g., Craig v. Keene*, 32 S.W.3d 90 (Ky.Ct.App.2000) (interpreting Kentucky law that applies to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes," quoting Ky.Rev.Stat. § 367.170); *Strauss v. Cruz*, 259 Ill.App.3d 608, 197 Ill.Dec. 465, 631 N.E.2d 468 (1994) (interpreting consumer protection act whose language explicitly states that it does not apply to "the communication of any false, misleading or deceptive information, provided by the seller of real estate"); *State v. First Nat. Bank of Anchorage*, 660 P.2d 406, 412–13 (Alaska 1982) (noting that of the 25 practices prohibited by the statute, none pertained to real estate).

Defendants next argue that even if claims arising from real estate transactions are generally cognizable under the statute, Williams may not bring her action against Goldman, Katzman or Edelman because she is not a consumer vis-à-vis the Defendants (i.e., the parties have not engaged in a consumer transaction), as Defendants have merely attempted to collect a debt

---

13. Cases cited by Defendants for the proposition that real estate transactions may not serve as the basis for a FDUTPA claim are all inapposite as they were decided before the repeal of, and based upon the interpretation of, the earlier definition of "consumer transaction." *See State v. De Anza Corp.*, 416 So.2d 1173, 1175 (Fla.App. 4th DCA 1982) (holding that a real estate lot "is not an item of goods, a consumer service or an intangi-

ble" as contemplated by the definition of "consumer transaction"); *Larry Kent Homes, Inc. v. Empire of America FSA*, 474 So.2d 868, 870 n. 1 (Fla. 5th DCA 1985) (same).

The lone post-1993 case cited by Defendants, *Bryan v. Clayton*, 698 So.2d 1236 (Fla. 5th DCA 1997), was not brought under the FDUTPA, but was prosecuted under the Florida Consumer Collection Practices Act and the FDCPA.

arising from a transaction with Foxcroft. Williams specifically claims that Defendants have violated Section 501.204(1), Fla. Stat., providing that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). "Trade or commerce" is defined as

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8).

As "debt collectors," Defendants are alleged to provide a "service." Moreover, the service that they provide is in connection with a consumer's purchase of a condominium. Finally, the real estate purchase at issue is, as stated above, a "consumer transaction" although Defendants did not participate in the transaction. Thus, accepting Defendants' position would require an interpretation of the statute that would prohibit a plaintiff who has been injured by a defendant acting in "trade or commerce" from bringing a claim against the defendant because the parties have not directly transacted with each other. Neither the language of the statute, nor the case law, supports such a requirement.

Conspicuously lacking from the provision granting individuals a cause of action is any requirement that the individual must have suffered the violation at the hands of a party who has provided goods or services to that individual. Nor is such a requirement implicit in the broad defini-

tions of "consumer" or "trade or commerce" noted above. Moreover, one of the stated purposes of the FDUTPA is "[t]o protect the *consuming public* and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (emphasis added). To effectuate this goal, courts have been instructed to liberally construe the provisions of the statute. *See* Fla. Stat. § 501.202. Defendants' attempt to add language to the statute that would restrict Williams' remedies finds no support in the statutory language or its stated purpose.

Courts have recognized that "[t]here is a surprising dearth of case law illuminating the scope of the Florida fair trade law." *N.G.L. Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672, 674 n. 3 (Fla. 3d DCA 2000) (quoting *Packaging Corp. Int'l. v. Travenol Laboratories, Inc.*, 566 F.Supp. 1480 (S.D.Fla.1983)). Notwithstanding the sparse authority, several cases suggest that Plaintiff has adequately pled a FDUTPA claim. In *Schauer v. General Motors Acceptance Corp.*, 819 So.2d 809 (Fla. 4th DCA 2002), plaintiff, a cosigner on a used car loan, brought a claim against the seller of the car and the creditor that financed the purchase. In overturning the dismissal of both claims, the court made no mention of the fact that plaintiff had not purchased the car from either entity (or made any purchase whatsoever).

As another court succinctly noted in rejecting a proposed privity requirement between the parties, "the standard is the conduct of the Defendant, coupled with the fact that the Plaintiff is a member of the consuming public injured by the conduct of the Defendant." *Pelican Ventures, LLC v. Azimut S.p.A.*, No. 03–Civ.–62119, 2004

WL 3142550, at *12 (S.D.Fla.2004); *see also Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (holding that defendant cruise line's argument that it did not sell tickets to plaintiff passengers did not absolve it from liability under the FDUTPA). The limited case law thus suggests that the relationship between the parties is irrelevant;[14] the only relevant inquiry being whether the defendant's violation of the FDUTPA has harmed plaintiff.[15] Because Plaintiff has alleged that she was injured by Defendants' unfair practices, Count IV states a claim.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

Defendant, Goldman's Motion to Dismiss First Amended Complaint [D.E. 39] is **GRANTED–IN–PART** and **DENIED–IN–PART.** Counts I, II, and III are **DISMISSED.**

Defendants, Edelman and Katzman's Motion to Dismiss First Amended Complaint [D.E. 42] is **GRANTED–IN–PART** and **DENIED–IN–PART.** Count III is **DISMISSED.**

14. Defendants have not cited any case law to the contrary.

15. Although the opinion did not directly address the sufficiency of the FDUTPA claim, the Florida First Circuit Court of Appeals recently certified a FDUTPA class action brought by mortgage holders against the law firm hired to initiate foreclosure proceedings. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,* 896 So.2d 773 (Fla. 1st DCA 2004).